## Bond v. Commonweatlh.

(Decided, December 12, 1930.)

J. R. WELLS and H. P. WELLS for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS VEST for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Reversing.

The grand jury of Livingston county, by a duly returned joint indictment against appellant, Lawrence Bond, and one Harp, accused them of the offense of grand larceny, the property involved being a small one-eyed dog belonging to McGinnis Mathew, and of the alleged value of more than $20. At the trial thereof the prosecution was dismissed as to Harp because of insufficient proof against him, but appellant was found guilty and punished by confinement in the penitentiary for 18 months. To reverse that verdict and the judgment rendered thereon, he prosecutes this appeal, and by his counsel urges four alleged errors as grounds authorizing a reversal, and which are: (1) That the court erred in overruling the demurrer filed to the indictment; (2) that the evidence was not sufficient to sustain the conviction, and for which reason appellant's motion for a directed acquittal should have been given, but, if mistaken in that, then the verdict is flagrantly against the evidence; (3) incompetent evidence introduced by the commonwealth over defendant's objections and exceptions; and (4) failure of the court to admonish the jury as to the effect of certain evidence, each of which will be considered and determined in the order named.

The argument in support of ground 1, i. e., insufficiency of the indictment and to which appellant's demurrer should have been sustained, is, that a dog is not property that is the subject of larceny, unless its owner has

paid the tax or license fee thereon, as provided in section 68b-4 of our present Statutes, and obtained a collar tag and placed it upon the dog, as is provided in section 68b-6 of the same Statutes. With that contention as a premise, it is argued that the indictment should have alleged such facts, since, as is also argued, any person may kill any dog under any of the circumstances outlined in section 68b-21 of the same Statutes, and the cases of Bridges v. Hamilton, 193 Ky. 17, 234 S. W. 744, and Shadoan v. Barnett, 217 Ky. 205, 289 S. W. 204, 49 A. L. R. 843, are cited and relied on in support of that argument. The Bridges case only sustains the right of one to kill a dog under the circumstances outlined in sections 68b-21 and 68b-24, but no statute that we have been able to find takes away the property rights of the owner of a dog in it, although under the statute the dog may be so circumstanced as to authorize any one to kill it; nor does the failure to pay the tax on and obtain a tag for the dog destroy such property rights, and no such holding was made, nor any such question involved in the Bridges case.

The Shadoan case, instead of supporting the argument of counsel, is, as we construe it, in direct conflict therewith. It was therein held that even at common law dogs were property, subject to regulation and control by the Legislature under, no doubt, the police power, because of the fact that some of them possess vicious dispositions and are liable to attack and injure members of society as well as to destroy property in other animals and fowls upon which they are prone to prey. Instead of determining that a dog whose owner has not observed any statutory regulation ceased to be property, the Shadoan case, in effect at least, holds to the contrary although it recognized that the common-law property right in a dog was of a base nature, rendering the dog not the subject of larceny, but which had long since been departed from because of legislation recognizing property rights in a dog.

Hence, in the case of Commonwealth v. Hazelwood, 84 Ky. 681, 2 S. W. 489, 8 Ky. Law Rep. 586, this court expressly held that, notwithstanding the rule of the common law as to qualified property rights in a dog, it could be and was the subject of larceny, since time had demonstrated that they had long since ceased to be mere possessions for pleasure, but had become useful as animals of value, serving their masters in many profitable ways

far in excess of other animals in whom absolute property rights always existed. We take this excerpt from that opinion:

"It seems difficult to give a sound reason for the old rule, in view of the indisputable fact that many dogs are esteemed of great value, and justly so considered. It was adopted, however, when, following the Draconian law, grand larceny was punishable with death, and upon the ground, perhaps, that a dog could have no determinate value. This, however, in this day, is not true; nor is it necessary to hold that a dog is of so base a nature that he cannot be the subject of larceny in order to save the life of a man. Property is clothed with value by the laws of society and public opinion. In a state of nature, property does not exist. What one then retains and uses. depends upon his power. When, however, he enters into society, objects become property, because they are impressed by its usages with certain qualities, among which is the right of the owner to their exclusive use, and the power to dispose of them. If it be true that whether an object be property depends upon the usage or notion of society, then, surely, it has impressed upon the dog all the attributes of property. The master is entitled to the exclusive use, and vested with an absolute power of disposition while the present public estimate of this faithful and useful animal, coupled with the recognition of him as property in various ways by our statutory law, forbids the assumption that he cannot be the subject of larceny because of a supposed base nature."

The fact that an owner may not have complied with the regulatory requirements of an owner of a dog does not destroy the property value of the animal so as to authorize any one to steal it and appropriate it to his own use any more than the failure to procure an automobile license and tag would authorize any one to steal and appropriate to his own use an unlicensed automobile, or to steal and appropriate intoxicating liquor manufactured, owned, and possessed contrary to existing law, and which latter was denied by this court in the recent case of Ray v. Commonwealth, 230 Ky. 656, 20 S. W. (2d) 484, 66 A. L. R. 1297. It therefore follows that

ground 1 is without merit, and which also applies to the argument that the instructions were erroneous because they did not embody the same idea, and also applies to the further argument that, since it appeared that the involved dog in this case had no collar with a tag to it, the peremptory instruction asked for should have been given.

The disposition of ground 2 requires a brief statement of the testimony. The alleged theft occurred, if at all, on the night of November 5, 1929, which was the day of the general election for that year. Appellant worked at the polling place of one of the voting precincts in the village of Tiline, in Livingston county, until the election closed, under the employ of a candidate of that election, his duties being to see that voters favoring his employer were brought to the polls. The undisputed proof shows that, after the closing of the polls, appellant, with perhaps others, went to a restaurant and procured his evening meal, and remained in the village until the ballot box could be carried to the county seat at Smithland, a distance of 12 miles, by a friend of his who resided in the opposite direction from Tiline, and in which direction appellant also resided, he intending to go to his home with and in the automobile of the conveyor of the ballot box after the latter's return. He spent that time mostly at church, there being a protracted meeting conducted in the village at that time. After church was over, he went to the store of the postmaster in the village with several others who were also waiting to be conveyed in the automobile of the same person with whom appellant intended to travel to his home. When that person returned from Smithland, the parties got into the automobile, one of whom was appellant, and were transported to their respective homes, and which was in the neighborhood of 10 o'clock, and appellant remained at his home throughout that night. No one saw him with the dog alleged to have been stolen at any time or any where.

Mrs. Mathew, the wife of the owner of the dog, came from her home in the country in a buggy to attend the services at the church on that night, and she stopped her vehicle at the rear of the church house and left the dog under it lying on the ground. No one in the village saw it any more, nor was it seen by any one in that vicinity or by its owner until several weeks later, when he dis-

covered it in the state of Pennsylvania, and which was brought about by circumstances now to be related.

There lived in the town of Princeton, some 30 miles or more from Tiline, a man by the name of Glass, who dealt in dogs. About 11 on the night in question Mr. Glass was approached by a man who had the dog, with an offer of its sale to him. They finally agreed upon terms, and Glass bought the dog and later sold it to a party in Illinois, who in turn resold it to a citizen of Pennsylvania, where Mr. Mathew found it and possessed himself of it. Mr. Glass and another witness who was present at the time the former bought the dog positively testified that the one who sold it was not appellant, and that the seller was alone, there being no one with him. It was made to appear in evidence that the grand jury returned the indictment against appellant chiefly upon the testimony of Monroe Householder, by whom the defendant offered to prove that one Bob Smith, an active prosecuting witness, had induced him to give false testimony to the grand jury under a threat to arrest Householder, who was a tenant of Smith, and to force him off of his leased premises if he refused to do so, and Householder testified that his statements before the grand jury were and are false, since he did not see appellant steal the dog or even have it in his possession at the time and on the occasion mentioned.

However, Mathew and Smith testified, in substance, that, after the return of the indictment, and within a short time before the trial, appellant inquired of them on separate occasions as to how much it would take to compromise the prosecution, and that, if it could be compromised, he would be willing to pay something to do so, "but if he could not compromise, he would enter a plea of guilty to stealing the dog and take a year or two in the penitentiary, and would like to do this if they would suspend the sentence and hold it over him during good behavior." That testimony was denied by appellant, and with his motion for a new trial he filed the affidavits of two witnesses who say they heard the alleged conversation so testified to by Mathew, and that no such compromise offer was made therein by appellant, but that, on the contrary, he positively refused to pay any sum, and emphatically denied having stolen the dog or possessing any knowledge concerning its disappearance, and to which he also testified at his trial.

The two alleged conversations testified to by Mathews and Smith contain the only testimony in the entire record remotely connecting appellant with the theft of the dog. It will be observed that even those statements, if actually made by appellant, were compromising in their nature, and it is argued that it might well be inferred that he was willing to settle the prosecution on such terms in order to rid himself of it, and to eliminate the possibility of a conviction to be followed by certain punishment, upon condition that he should not be punished, through the suspension of the execution of the judgment during his good behavior, or that he would be willing to pay a reasonable amount rather than to incur the costs and hazards of a trial, and it is therefore argued that the testimony embodying such compromise offer was incompetent, and should have been excluded as violative of the general rule of evidence forbidding the introduction of an offer of compromise as against the one who made it. Before addressing ourselves to that question, it should be observed that, if such attributed statements, as given by the two witnesses who testified to them, are admissible, then we conclude that the contents of them were of such a nature as in one view to imply guilt, and were relevant on the issue of appellant's guilt of the larceny with which he was charged, although not by any means positive proof thereof, since it might reasonably be argued that the one making such an offer under the circumstances would not do so unless he was conscious of his guilt, although an opposite inference or conclusion might also be drawn therefrom.

Coming now to the competency of the testimony so given by the two witnesses, we had before us one phase of the question, in the very recent case of Bennett v. Commonwealth, 234 Ky. 333, 28 S. W. (2d) 24, 26, and in which the proven offer was made by defendant to the commonwealth's attorney who testified to it at the trial. In that case we held that the statements of defendant made in his compromise offer were erroneously admitted because, and only because, they were made to and testified to by the commonwealth's attorney under such circumstances as demonstrated that they were made to him in confidence, he at the time being the selected counsel to represent all members of the public, including a defendant in a criminal prosecution, since it was as much his official duty to shield and protect the innocent as it was

to prosecute the guilty. After considerable discussion, it was finally concluded by this court in that opinion that: "Confidence reposed should be confidence respected. Because of the relation occupied by the commonwealth's attorney and the circumstances surrounding this particular consultation, we are not so sure but that all this statement should have been excluded on that ground. But of this we are sure: That it was improper to permit the attorney to testify as to the offer of compromise made by the accused."

The question as to whether such offers of compromise made by a defendant in a criminal prosecution to one not occupying a confidential relation, or under such circumstances as to inspire the belief in the defendant's mind that such was true, was not presented in that case, nor was it determined, for the cogent reason that, if such determination had been attempted, it would have been dictum, in the absence of the question being involved. However, the court in that opinion did discuss in a general way, and as a prelude to the determination of the concrete question involved, the general doctrine of the competency of compromise offers in criminal prosecutions, and in doing so referred, inter alia, to the text in 16 C. J. 630, saying: "A voluntary offer by accused before trial to plead guilty on terms to the offense charged is competent as his admission." In support of that text the cases of Commonwealth v. Callahan, 108 Mass. 421, and Kirk v. State, 56 Tex. Cr. R. 429, 120 S. W. 436, are referred to in the notes. Those cases involved offers to compromise made to arresting peace officers who had no duty to perform in the trial of the prosecution, nor any control over it, and which was also true with reference to the witnesses, Mathew and Smith, who testified to the involved offer in this case. Those courts held, in effect, that, since the involved offers of compromise were relevant on the issue of guilt or innocence, and entitled to such weight as the jury might attribute to them, it was proper to admit proof of them by witnesses not so circumstanced as to preclude them from testifying thereto.

Moreover, we can discern a broad distinction between the making of such an offer in confidence to one occupying a confidential or quasi confidential relation to the defendant (as was held in the Bennett case) and where the offer is made neither as a confidential communication nor to one sustaining such relationship to defendant.

480

We therefore conclude that the court did not err in admitting proof of the offer by the two witnesses who testified to it.

It does not follow from that fact, however, that the verdict is sustained by sufficient evidence. As we have observed before, the somewhat doubtful and ambiguous admissions or confessions testified to by Mathew and Smith are the only incriminating testimony to be found in the record. None of the other evidence introduced by the prosecution remotely, inferentially, or otherwise connected appellant with the commission of the crime, and his testimony and that of his witnesses overwhelmingly establishes his innocence. We therefore conclude that the verdict of conviction was flagrantly against the evidence, and for that reason the motion for a new trial should have been sustained.

The only incompetent evidence of materiality to which our attention has been directed, complained of in ground 3, was that given by Smith and Mathew "that Russell Decker told them at Tiline at Cliff Mathew's store, that Lawrence Bond said if he could not compromise the case he would enter a plea of guilty." The defendant objected to that evidence, but it was overruled, and he excepted. He then moved to exclude it from the jury, which was also overruled with exceptions, and he then moved the court to admonish the jury as to the effect of that evidence (and which could only be admitted for the purpose of contradicting Russell Decker if he had testified in the case, but which he had not done at that time), and that motion was also overruled with exceptions. It will be observed that the testimony so given was what Russell Decker had said that the appellant had told him, Decker. It was both second-hand and hearsay, and we cannot but think that there must have been some mistake in preparing the bill of exceptions so as to make the testimony appear as original and substantive testimony offered by the commonwealth when it would have been competent if Decker had previously testified and he had denied making such a statement; but even in that case the object, effect, and purpose of it should have been told to the jury, and which was to contradict Decker if he denied making the statements to the two witnesses who testified to them.

The commonwealth asked appellant on cross-examination if he had not served a term in the penitentiary, which he admitted, and which was for the crime of car-

nally knowing a female under age, he explaining that he was quite young at the time, and that the prosecutrix was of notoriously bad character, but which, of course, was no defense to that crime. That testimony was objected to, and the objection was properly overruled. But, having been objected to, it was the duty of the court to admonish the jury as to the purpose of its introduction and the only effect that it could have upon the verdict, but which the court failed to do, if the record before us is a proper presentation of what occurred.

We have also concluded that the evidence in this case makes it one requiring an instruction in conformity with section 240 of the Criminal Code of Practice, saying: "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed." The testimony of Mathew and Smith as hereinbefore outlined at most embodies only an implied or inferential confession on the part of appellant of his guilt, and neither of the conversations so testified to was made in open court, and they were therefore insufficient to sustain his conviction, unless there was other (clear) proof that such an offense was committed; or, in other words, that the corpus delicti was so proven. In this case the offense consisted in the felonious taking and carrying away of the dog of Mathew, and the only circumstance proven in the case to establish that fact was given by the wife of the prosecutor, who said that she left the dog under her buggy when she went into the church house and found it absent when she returned, and it was later proven to have been in Princeton in the possession of a nonresident stranger. It is not even shown, except by inference, that either Mr. Mathew or his wife did not consent to whatever was done with the dog.

But, if it should be conceded that its disappearance, in whatever manner brought about, was without their consent, then the fact remains that it rests only in inference as to whether it disappeared, i. e., whether it strayed away and was later captured en route to Princeton by some one having no knowledge of its owner, or even whether it had an owner, and all of which is sufficient to create an issue as to whether it was in fact feloniously or otherwise taken and carried away. In such circumstances it is the declared rule that it is the duty of the court to instruct the jury in conformity with

the provisions of the section of the Criminal Code, supra. One of the latest cases in which the question was discussed and determined is Ratliff v. Commonwealth, 182 Ky. 246, 206 S. W. 497, 501, in which it was held, inter alia, that: ''Where a confession by an accused is proven, the rule relating to instructing the jury in regard to it, as provided in section 240, Criminal Code, is, if the corpus delicti of the crime is clearly proven by other evidence independent of the proof of the confession by the accused, an instruction will not be given in accordance with section 240 supra; but if the proof, other than that of the confession, leaves it doubtful whether the crime has been committed, then the instruction should be given, as provided by section 240, supra.'' Other cases to the same effect are incorporated in that opinion. It not being conclusively proven in this case that larceny was committed, the court in discharging its duty to instruct upon the whole law of the case should have given the instruction indicated.

For the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and to set aside the judgment, and for proceedings consistent with this opinion.