245 S.W.2d 895 (1952)
STATE
v.
CHRISTIAN.
No. 42715.
Supreme Court of Missouri, Division No. 1.
February 11, 1952.
*896 C. A. Powell, Dexter, Elvis A. Mooney, Bloomfield, for appellant.
J. E. Taylor, Atty. Gen., Lawrence L. Bradley, Asst. Atty. Gen., for respondent.
HYDE, Judge.
Defendant appeals from conviction of robbery in the first degree and sentence of five years in the penitentiary.
Defendant was charged in connection with the robbery of the Bank of Gordonville in Cape Girardeau County. A jury case against defendant is conceded and the errors assigned on this appeal are in connection with the cross-examination of one of the State's witnesses, the cross-examination of defendant and the argument of the prosecuting attorney.
The bank was robbed about 10:10 A.M. on February 21, 1950. Three men drove up in a blue Mercury and parked in front of the bank. Two of them went in and took money and currency from the bank employees at the point of a pistol. Defendant was identified as the man who remained in the car by two witnesses on the street at the time. He lived at Dexter and owned a blue Mercury. He was arrested about five weeks later, after he had attempted to dispose of some of the money, ($15.00 in pennies) traced as belonging to the bank (by the money bag and marked coin wrappers) which was buried on his father's farm. The State also had evidence of an admission of participation in the robbery, made by defendant to a fellow prisoner while in jail at Jackson. Defendant's defense was alibi.
One of the State's witnesses, Highway Patrolman Dale Crites, testified concerning finding the money bag and coin wrappers and questioning defendant about the disposition of the pennies. He was cross-examined about those matters and then about the further questioning of defendant after he was arrested. The following, which is the basis of defendant's first assignment of error, then occurred:
"Q. You arrested Christian about what time that night? A. As I recall, about ten-thirty.
"Q. You fellows questioned him until about what time in the morning? A. Well, we questioned him off and on up until possibly four o'clock.
"Q. Did he ever admit he had anything to do with Gordonville bank robbery? A. No. Not exactly. He asked one time what he would get if he would admit it. He wouldn't admit doing it."
Defendant's counsel asked that the jury be discharged and this request was denied. Patrolman Crites was then further cross-examined by defendant's attorney, as follows:
"Q. I am talking about the night he was arrested. Did he say anything that night about having anything to do with the robbery? A. No. He denied having anything to do with it. * * *
"Q. Did he say that night he wanted to know what would happen if he would plead guilty to it? A. Yes, sir.
"Q. Where did he say that? A. In the city hall."
Defendant assigns as error the Court's failure to take any action either to direct the jury to disregard the statement that defendant asked what he would get if he would admit his participation in the robbery or to discharge the jury. Defendant relies on State v. Abel, 320 Mo. 445, 8 S. W.2d 55, 56 and State v. Cardwell, 332 Mo. 790, 60 S.W.2d 28. In the Abel case *897 testimony, considered as to an offer to compromise, was introduced by the State and not brought out by the defendant on cross-examination as here. The reason for holding evidence of such an offer to compromise inadmissible is thus stated in the Abel case: "The offer by the defendant was not an extra judicial confession; it was an attempted negotiation for a compromise, not of a felony, but of the punishment to be inflicted. The defendant was charged with a capital offense; he stood in the shadow of the gallows. His offer was not inconsistent with a plea of not guilty. By his offer he, in effect, said he would plead guilty on condition that his punishment would be assessed at imprisonment in the penitentiary for five years rather than take the chance of the death penalty. This he had a right to do. * * If this had been an offer to compromise a civil action, it would have been privileged. We can see no good reason why it should not be so considered in a criminal action. The offer to plead guilty should have been accepted and sentence passed upon it, or it should have been rejected, and `never have been heard of again.' The prosecuting attorney should not have been allowed to reject the conditional offer and afterwards use it against the defendant at the trial." See also State v. McMurphy, 324 Mo. 854, 25 S.W.2d 79; State v. Meyers, 99 Mo. 107, 12 S.W. 516.
In State v. Cardwell, supra, as in State v. Meyers (quoted from in the Abel case) the State offered evidence of a plea of guilty which was not accepted. The ruling that this was improper is in accord with the weight of authority although there is authority the other way. See 20 Am.Jur. 420, Sec. 481; Annotation 124 A.L.R. 1527; 4 Wigmore on Evidence 66, Sec. 1067; Wood v. U. S., 75 U.S.App.D.C. 274, 128 F.2d 265, 141 A.L.R. 1335. The Abel case is based on the Meyers case and it assumes that an offer to compromise on punishment should be treated the same as a rejected or withdrawn plea of guilty. However, on the matter of an offer to compromise a criminal case, "it is generally held that an offer of compromise or of restitution of the property which is the subject of the crime, whether accepted or not, may be received in evidence". 22 C.J.S., Criminal Law, § 736, p. 1268; see also 4 Wigmore on Evidence 31, Sec. 1061; 20 Am.Jur. 440, Sec. 511; State v. Belknap, Mo.Sup., 221 S.W. 39; Wilson v. State, 31 Ala.App. 560, 19 So.2d 777; Bond v. Commonwealth, 236 Ky. 472, 33 S.W.2d 320; Waldrip v. State, 130 Tex.Cr.R. 205, 93 S.W.2d 414; Duffer v. State, 136 Tex.Cr.R. 199, 124 S. W.2d 355. Wigmore explains why the rule in civil cases does not apply in criminal cases as follows: "In a criminal prosecution, the accused's offer to pay money or otherwise to `settle' the prosecution will be received against him, because that mode of stopping or obstructing the prosecution would be an unlawful act, and good policy could not encourage that mode of dealing with a criminal charge; hence such an offer is receivable for whatever inference may be drawn from it; subject, of course, to the accused's explanation. But an unaccepted offer to plead guilty is governed by the rule for pleadings (post, Sec. 1067)."
We think there is a difference between negotiations to compromise a civil case and attempting to compromise even on punishment in a criminal case, as well as in the applicable public policy, apparently overlooked in the Abel case. A compromise of a civil case rests entirely upon the agreement of the parties, which is binding upon the Court, and public policy favors disposition of litigation by this method. It is fundamental that no agreement concerning punishment can be made between a defendant in a criminal case and police or prosecuting officers, which is binding on the Court, and, therefore, public policy does not favor such bargaining for punishment. There is also a substantial difference between a plea actually made in Court (which the Court in its discretion decides should be rejected or withdrawn) and a mere offer to make a plea upon certain conditions as to punishment. Certainly, in this case, where the matter was brought out on cross-examination of a State's witness in the way it was, we cannot say it was error for the Court to refuse *898 to take the action requested. It will be noted that the question was: did defendant admit he had anything to do with the robbery? This, in effect, called for the witness' conclusion as to what amounted to an admission and, in view of the above authorities on the matter, it was not unreasonable for the officer to consider the defendant's statement to be in the nature of an admission and thus within the scope of his answer to the question. We, therefore, overrule this assignment.
Defendant's second assignment is that it was error to permit cross-examination of defendant in regard to two notes (State's Exhibits 12 and 13) to a fellow prisoner Bill Wills and to admit these two Exhibits in evidence. They are as follows:

"State's Exhibit 12

"(Original in pencil writing)
"Bill. How are you Say John Acain told me you were O.K. Bill I need your help on my trial. Would you help me.
"Bill would you write me what I send you a copy to copy off of. If you are game. It will be worth $500 to me. It will be deposited in your name in any Bank you say. Bill I want you to understand that it is about one of your Buddy Maddox.
"Bill if I get out I have a good go in my business. I need your help and John Acain said you would. What about it. Now Bill you would have to go on witness stand against Maddox and Coon upstairs you understand. I will write what I want you to copy. I already have the thing for you to say. Put your answer on here."

"State's Exhibit 13

"(Original in pencil writing)
"This is what I want you to write. On this other sheet of paper.
"I heard Thurman Abbott say to Clarence Maddox that Paul Christian was not in on the Bank Robbing or any other job of any kind. Thurman Abbott said Paul owed him some money and he was going to get even in this way and he said another guy by a nick name Red. Thurman said that he gave Red those pennies sometime before he went to Michigan. Thurman told
Maddox that when he gave Red the pennies to say he got them from Paul Christian. ------------------------------ "Sign your name here.
"Bill I need this bad so please help me. You name the place where you want it put and I will double it. Bill it will take me about a year to put it there for you. But it will be there. You just name the place. I have two other guys talking. You get this don't you.
"Bill I am counting on you. John Acain said you probably would. I am sure counting on you.
"Your Buddy "I need you as a witness at the trial. Will you be for me I would like to have this back as soon as possible because I may get to leave. Bill Writ it as plain as you can. Ha! Ha! Like my writing.
"Your Buddy"
There can be no question about the admissibility of these exhibits. "An attempt to fabricate evidence is receivable as evidence of one's guilt of the main facts charged." 20 Am.Jur. 272, Sec. 289; see also 20 Am.Jur. 192, Sec. 186, p. 265, Sec. 280; 22 C.J.S., Criminal Law, § 633, p. 966. Such an attempt is construed as being in the nature of an admission of guilt and we find no authority against receiving it in evidence. The latest case in this Court is State v. Smith, 355 Mo. 59, 194 S.W.2d 905, 907, in which we said: "Evidence to show that an accused has attempted to fabricate or procure false evidence or destroy evidence against him is always admissible as showing consciousness of guilt. State v. Mathews, 202 Mo. 143, 100 S.W. 420. `Evidence of the fact of an attempted subornation is admissible as an admission by conduct that the party's cause is an unrighteous one.' Fulkerson v. Murdock, 53 Mo.App. 151, loc. cit. 154. See also State v. Howe, 287 Mo. 1, 228 S.W. 477."
On the question of the cross-examination being outside the bounds of his direct examination, defendant relies on State v. Gorden, 356 Mo. 1010, 204 S.W.2d 713 and State v. Green, Mo.Sup., 236 S.W. 2d 298. The facts in these cases are very *899 different and the situation here is more like that in State v. King, 342 Mo. 975, 119 S.W.2d 277. RSMo 1949, Sec. 546.260, V.A.M.S., provides that a defendant, who testifies as a witness, "shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case". A defendant may be impeached by proof of prior inconsistent statements. State v. West, 95 Mo. 139, 8 S.W. 354; State v. Myers, 354 Mo. 277, 189 S.W.2d 279. However, such statements must be relative to matters inquired into in chief, State v. Avery, 113 Mo. 475, 21 S.W. 193; State v. West, supra; but such inconsistent statements may be in writing. State v. Kennade, 121 Mo. 405, 26 S.W. 347. "The `matter referred to in his examination in chief means the things he testifies about. * * * If the defendant in chief in a general way refers to a subject, he may be examined in detail as to that subject. Where he states a fact in relation to his actions, the prosecutor may inquire as to particular circumstances which would throw light on that fact." State v. Ayres, 314 Mo. 574, 285 S.W. 997, 998. In the Ayres case, the defendant (charged with manufacturing intoxicating liquor) testified in chief that he did not own any of the material or equipment used nor have anything to do with the manufacture of liquor at the place in question. It was held proper for defendant to be cross-examined about a statement he had made to a candidate for prosecuting attorney that he was participating in this liquor operation and offering him a bribe to let it continue after his election.
We think the ruling in the Ayres case is applicable here. John Aiken was the fellow prisoner of defendant who testified that defendant told him about his participation in the robbery. Aiken (referred to as Acain in Exhibits 12 and 13) also was asked: "Do you know if Paul Christian ever talked to Bill Wills about testifying? He answered : "He wrote him several notes." Defendant on direct examination testified that he knew Aiken; that he met him "when they put me in jail at Jackson"; and that he was there about two months. He also asked: "Did you ever tell him (Aiken) you had anything to do with the robbery?" He answered: "I never said a thing to him about it." On cross-examination defendant was asked: "I believe you stated a moment ago that you never talked to John Aiken about the robbery?" Without objection he answered: "That is right." The following then occurred:
"Q. I hand you State's Exhibit 12 and ask you to look at it and tell whether that is your handwriting there.
"Mr. Powell: We object. He wasn't asked any thing like that on direct examination.
"Mr. Dempster: We want to impeach him and show that he did talk to Aiken.
"The Court: Let me see the exhibit.
"Mr. Powell: (Out of hearing of jury) He wasn't asked about that. If it is competent it was part of their case in chief and not in rebuttal. He hasn't testified to anything like that. He wasn't asked about it.
"The Court: (Out of hearing of jury) He was asked on direct examination. He testified he never talked to Aiken about the robbery. He repeated it. He said he never wrote any notes to Aiken, that the only thing they talked about was the kind of car.
"Mr. Dempster: (Out of hearing of jury) The letter would indicate that he had talked to Aiken. He quotes Aiken.
"The Court: (Out of hearing of jury) He said he never talked to Aiken about this robbery.
"Mr. Powell: He wasn't asked about writing notes.
"The Court: Objection overruled.
"Mr. Powell: Save an exception.
"Q. I believe I asked you whether that was your handwriting. A. Yes, sir.
"Q. Tell the Court and jury where you were when you wrote that, if you know.
"Mr. Powell: We renew our objection. He wasn't asked any questions about that on direct examination.
"The Court: Overruled.
"Mr. Powell: Save an exception.
"A. I was in jail at Jackson."
*900 Thereafter there were questions as to the contents of the notes, objections to which were sustained; and the exhibits were received in evidence over defendant's objections. We think this cross-examination is within the ruling of the Ayres case, 285 S.W. loc. cit. 998, and proper for the purpose of impeachment. Defendant did say on direct examination that he never talked to Aiken about the robbery, "never said a thing to him about it." These exhibits, which defendant admitted he wrote, tended to show that he did. They came into the case in the same manner as the exhibits ruled on in the King case. 119 S.W.2d loc. cit. 282. We hold that there was no error in permitting this cross-examination and admitting these exhibits.
Defendant's final assignment concerning the argument of the prosecuting attorney is that during the closing argument he said: "The defendant saw the handwriting expert sitting over there to explain the letters." Defendant's brief construes this to mean "that the defendant admitted writing the two notes because he saw a handwriting expert sitting over there in the court room." It is argued: "There is no evidence that there was a handwriting expert in the court room nor present. There is no evidence that the defendant knew there was a handwriting expert available, even though one was available." This one sentence is the only part of the State's closing argument in the record and none of the argument of defendant's counsel is shown. The Court sustained defendant's objection, which stated no ground and said: "The jury will disregard that statement. You will be guided by the evidence." Defendant's request to discharge the jury was denied but we cannot say from what appears in the record that the Court's action was not adequate. The action required under such circumstances must necessarily be left largely to the discretion of the trial court. State v. Nichols, 327 Mo. 1237, 39 S.W.2d 777, 780; State v. Willhite, Mo. Sup., 159 S.W.2d 768; State v. Graves, 352 Mo. 1102, 182 S.W.2d 46. We cannot say it was abused from what is before us.
The judgment is affirmed.
All concur.