STATE of Missouri,
Plaintiff-Respondent,

v.

John William PIERCE,
Defendant-Appellant.

No. 39282.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 26, 1980.

Claude Hanks, Judith D. Lohaus, Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Chief Judge.

John W. Pierce was convicted of a violation of § 560.010 RSMo.1969, Arson of a Dwelling House, and, in accordance with the jury verdict was sentenced to a term of two years and seven months in the custody of the Missouri Department of Corrections. He has appealed. We reverse and remand for a new trial.

Appellant contends the trial court erred in (1) failing to declare a mistrial when the state cross-examined him on whether he had committed another act of arson without showing a conviction of that crime; (2) overruling his oral motion to prohibit the state from interjecting the issue of fire insurance into the case without a showing of overinsurance; (3) allowing the state, over objection, to instruct the jury on the law of general responsibility for the conduct of others during voir dire and to define "reasonable doubt" during a summation; (4) submitting to the jury verdict forms which did not comply with MAI–CR 2.86; and, (5) overruling his motion to suppress statements.

Appellant has not attacked the sufficiency of the state's evidence to support the verdict of the jury and therefore a brief statement of the facts supporting the jury verdict will be sufficient.

The evidence, viewed in this light, was that the appellant purchased the building at 1912–1914 Senate in the City of St. Louis in June or July, 1975, for $5,000.00. He and his family occupied the first floor apartment as their home and two second-floor apartments were occupied by tenants of the appellant for dwelling purposes. One of these tenants was Cecil Hearn who was a co-defendant with the appellant and appeared and gave testimony for the state. One Jack Barrack had sub-let the other of the second floor apartments from Al Jordan, appellant's tenant, four days prior to December 4, 1975. Appellant, Hearn and Barrack, acting together, conspired to set fire to the building and on December 4, 1975, appellant advised Hearn that the building would be burned that night. Hearn removed some of his possessions from his apartment and Jordan removed some of his possessions from the basement of the building. Hearn observed two gasoline cans sitting by appellant's truck and also saw appellant with a siphoning hose. Hearn and Barrack carried two cans containing ten gallons of gasoline to the attic of the building and appellant instructed Barrack to burn the attic, the second floor of the building and the roof, but not to burn the first floor.

At approximately 9:30 p. m. Hearn left the premises and when he returned the next day the walls were blown out of the ends of the building and it smelled of fire. The attic, the second floor and the exterior of the building were damaged. The first floor of the building suffered some damage.

Appellant, in a statement made to Thomas O'Connor, a police officer, admitted that he had been contacted on December 4, 1975, by either Hearn or Barrack and there was some conversation about the house being burned down that night. He further admitted that he had siphoned five gallons of gas from his truck and it was taken to the second floor of the building. He also told Officer O'Connor that, as the owner of the house, he expected to collect insurance money for heat, smoke and water damage caused by the fire in Hearn's apartment.

In his statement to Officer O'Connor, appellant said he and his wife and children had left their apartment on the evening of December 4, 1975, and gone to the residence

of his brother-in-law in Imperial, Missouri, and did not return to their home again until approximately 1:00 p. m. on the 5th. The dwelling had been burned when they returned. He knew Hearn wanted to set fire to his second floor apartment because Hearn needed money for past due rent and to post bond and hire an attorney because he had been arrested in Illinois for a burglary, and Hearn intended to collect insurance on the contents of his apartment. He also told the officer he had loaned Hearn the money to purchase this policy of insurance. He told Officer O'Connor that he had consented to Hearn setting fire to his apartment and that his part in this scheme was siphoning the gasoline from his truck.

There was also testimony from other police officers and a criminalist of the Metropolitan St. Louis Police Department that the fire had the characteristics of an explosion caused by gasoline and that a laboratory analysis of debris and other evidence from the scene showed that gasoline was present.

Appellant's first Point Relied On is directed at a question propounded to him by the Assistant Circuit Attorney during cross-examination, whether, in fact, he had committed the offense of arson of a house located in St. Louis County. After the appellant responded "No" his trial counsel interposed an objection and requested that it be stricken from the record, the jury be instructed to disregard it, and a mistrial be declared. Appellant's objection to the question was sustained, was ordered stricken from the record, and the jury was instructed to disregard it; his request for mistrial was denied.

This case was tried prior to the decision in *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979) wherein it was held that it was prejudicial error requiring reversal of a conviction and remand to the trial court for a new trial for a prosecutor to inquire on cross-examination of a defendant, *over objection,* whether the defendant had engaged in criminal misconduct for which he had not been convicted where the state acknowledged that the question was an attempt to elicit evidence of another crime which would have a legitimate tendency to directly establish defendant's guilt of the charge for which he was on trial.

At trial of this case the prosecutor did not state on what grounds this line of inquiry was admissible. On appeal the state initially contended that the question was proper to test the witness's credibility, but after the *Dunn* decision abandoned that argument and took the position that any prejudice resulting from the question was removed by the trial court's instructions to the jury to disregard the question and answer.

As the court in *Dunn* recognized, 577 S.W.2d, l.c. 651, " . . . it is apparent that it is not the answer which prejudices the defendant, it is the question that carries the poison." Nevertheless, the court recognized that although a general question of whether the witness has ever committed a crime might have little effect on a jury, a question containing detailed information such as date, location, victim, or nature of the crime would reasonably cause the jury to conclude that the question was based upon information known to the questioner which a negative response would not remove, and, therefore, would leave the jury with a belief that the witness had committed the crime inquired about, and was a person of bad character, whether the question had support in fact or not.

The court in *Dunn* did not adopt an absolute rule forbidding all questions put to any witness, defendant or not, with respect to prior misconduct, other than convictions. It did however, take notice of the fact that a question concerning prior misconduct places a defendant in a more precarious position than any other witness in the case and presents him with two alternatives, either of which is damning.

A witness faced with the question of prior criminal misconduct where there has been no conviction for said misconduct, may make an objection to the question on the ground that an answer will incriminate him and he will not be convicted by reason of his refusal to answer the question. A defendant-witness, however, faces the likely

prospect that by asserting his self-incrimination rights as grounds for refusing to answer the question his objection will be viewed by the jury as indicating that he was guilty of the misconduct contained in the question; and, if the defendant answers the question and denies the alleged misconduct, the details contained in the question propounded by the prosecutor will likely lead the jury to think the prosecutor knows that the defendant was guilty of the misconduct to which the inquiry is directed.

Because a defendant is put in this untenable position by a question of this kind, the court in *Dunn* said, l.c. 653:

> Cross-examining a defendant as to alleged prior acts of misconduct, particularly where details are stated and the acts are somewhat similar to the case on trial, . . ., lends itself to the creation of substantial prejudice even though the answers are in the negative.

It is clear that *it is the asking of the question* which contains the specifics set out in *Dunn* that "lends itself to the creation of substantial prejudice even though the answers are in the negative" and is condemned.

To fully comprehend the impact of this line of inquiry in this case the following colloquy is set out:

Q. Have you ever lived in the county?

A. Yes, sir.

Q. What street was that?

A. I lived on Gravois.

Q. When did you live there?

A. '70.

Q. Did you in fact commit the offense of arson concerning the house in St. Louis County?

A. No, sir, I did not.

Q. You didn't do that?

MR. WALTHER: Judge, could I interpose an objection at this point to that question?

This question contains the location, the year, and the nature of the crime—arson of a dwelling house in which the appellant lived at the time—which is the identical crime for which appellant was then on trial. We believe the question falls within the category of questions condemned by *Dunn* and the state apparently concedes that it does.

The question remains, however, whether the prejudice resulting from the question was removed by the trial court's instruction to the jury to disregard the question and answer.

In *Dunn* the question was admitted despite an objection and a motion for mistrial; there was no request that the question and answer be stricken and the jury instructed to disregard.

Since *Dunn* this court decided *State v. Williams,* 588 S.W.2d 70 (Mo.App.1979) where defendant was cross-examined as follows:

Q. (prosecutor) Now Mr. Williams (defendant), on Friday, April 23 of 1976, about ten A.M., did you commit the felony of_ _?

Defendant's counsel interrupted with an objection and request for a mistrial. The objection was sustained but the trial court denied the motion for mistrial. We opined that, under *Dunn,* had the prosecutor completed the question by designating the specific crime alleged to have been committed by the defendant, reversible error would have occurred. However, since the inquiry did not go into the specific details of the crime, the question was not completed, the trial court forbade any further inquiry regarding the commission of the crime, the defendant was not required to make any answer, the trial court in the exercise of its discretion was able to determine the prejudicial effect of the incomplete question, and at the time the cause was tried, *State v. Foster,* 349 S.W.2d 922 (Mo.1961), permitted such inquiries. We found no reversible error under those circumstances.

The Western District considered this same issue in *State v. Cleveland,* 583 S.W.2d 263 (Mo.App.1979), where the state questioned the defendant and his witness about a prison escape and a robbery, when neither had been convicted of those crimes, for the purpose of affecting their credibility under

the authority of *State v. Foster,* supra, in a trial for armed robbery and felony-murder. In reversing defendant's conviction, the Western District held that *Dunn* did not directly rule on the question of the propriety of the prison escape because that misconduct was not "similar" to the crimes for which Cleveland was on trial; however, the decision went further and opined that the Supreme Court did not intend to say that similarity was the only factor to be considered in ruling on the propriety of these questions, but that another limitation on evidence of this kind is its relevancy to the disposition of the defendant to tell the truth under oath.

Both of these cases, to some extent at least, in arriving at diverse decisions recognize some discretion in the trial court to permit or limit the scope of this type of inquiry in reliance on *Dunn,* and conclude that it is only where the trial court has abused its discretion that the question is prejudicial and requires a reversal.

We believe, nevertheless, that in *Dunn* the court made it clear that a presumption of prejudice arises when questions of this kind are directed to a defendant on cross-examination and the burden is on the state to demonstrate that the posing of a question concerning a defendant's alleged criminal misconduct which has not resulted in a conviction did not result in prejudice. The source of this belief is the statement of the court, 577 l.c. 653:

> . . . that although a defendant testifying in his own defense may, as a general proposition, be impeached the same as any other witness, nevertheless, a court should on objection being made, limit certain cross-examination of a defendant where the cross-examination is technically purely collateral as to general credibility and the nature is such as to impair the defendant's right to a fair trial on the charge brought against him.

In circumstances such as we face here, defense counsel has no forewarning and any objection must necessarily either interrupt the questioner or be made after completion of the question. Questions of this type go to purely collateral matters and cannot be limited until after they are stated. Since, as the *Dunn* court recognized, questions of this kind are by their very nature inherently prejudicial to a defendant and tend to deprive him of a fair trial, they have no place in our system of justice except where they are offered under one of the exceptions to the general rule that evidence of other crimes committed by an accused, similar to those for which he is on trial, are not ordinarily admissible for the purpose of raising the inference that the accused probably committed the offense charged by the prosecution. The state at no time offered this evidence under any of these exceptions, nor did the defendant, in his testimony, open the door to evidence of this nature.[1]

For these reasons we reverse the judgment of conviction and remand the cause to the trial court for a new trial.

We do not reach the other Points raised by appellant because on a retrial they may not recur.

Judgment reversed and cause remanded to the trial court for a new trial.

STEPHAN, P. J., and STEWART, J., concur.

---

1. See 87 A.L.R.2d 891, Admissibility, in prosecution for criminal burning of property, or for maintaining fire hazard, of evidence of other crimes.