**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ronald FREEMAN, Defendant-Appellant.**

No. 12860.

Missouri Court of Appeals, Southern District, Division Two.

March 7, 1984.

Motion for Rehearing or Transfer Denied March 19, 1984.

Application to Transfer Denied April 16, 1984.

Vernie R. Crandall, William C. Crawford, Douglas K. Crandall, Crandall, Crawford & Crandall, Carthage, for defendant-appellant.

John Ashcroft, Atty. Gen., Carrie D. Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Ronald Freeman guilty of receiving stolen property, as defined and denounced by § 570.080, RSMo.1978. The trial court found defendant to be a prior offender within the meaning of § 558.016.2, RSMo. (Supp.1983), and assessed his punishment at imprisonment for a term of seven years as authorized by § 558.016.1 and § 558.011.1(3), RSMo. (Supp.1983). Defendant has appealed.

In brief sketch and outline, the operative facts are that on December 12, 1981, a group of young adults gathered at the residence of Margaret Harvey, near Joplin. They had been enlisted by Mrs. Harvey and her husband as baby-sitters so the Harveys could attend a Christmas party.

We are concerned with two young men who were present. Calvin Dale Dardeene, 18 years of age and unemployed at trial time, is the first; Kevin McKenzie, who appears to be about the same age and who was also unemployed at trial time, is the

other. As McKenzie put the matter, both men "just needed some money. Didn't have any money."

Mrs. Harvey's next-door neighbor, George Walker, had gone to Wichita, imprudently leaving his tool shed subject to burglary. Mr. Walker had an electric drill, inferably worth $50, and a table saw worth "around three hundred [dollars] or better" in the shed.

By whatever means, Dardeene knew the defendant was interested in acquiring an electric drill. Being pressed for cash, Dardeene and McKenzie went next door and stole Mr. Walker's drill. Defendant was contacted by telephone. Presently he came by the Harvey residence and, according to Dardeene, bought the drill for $10.

Disinclined to require opportunity to knock twice, Dardeene and McKenzie asked the defendant if he would be interested in Mr. Walker's table saw. The defendant was interested, but the saw was "too large" to be concealed in his automobile. The three men made arrangements to transfer the table saw to the defendant's truck. Dardeene and McKenzie then went back to Mr. Walker's tool shed, stole the saw, and took it to Snowball, "which is a chat pile" near Joplin. There the saw was placed in the defendant's truck, and the defendant gave Dardeene $65 in cash. After Mr. Walker discovered his loss, police investigation led officers to Mrs. Harvey and eventually to Dardeene and McKenzie. This prosecution followed.

Although the sufficiency of the evidence to support the judgment of conviction is not challenged, we examine that aspect of the appeal very briefly and generally. Section 570.080, RSMo.1978, provides in pertinent part:

1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen.

\* \* \* \* \* \*

3. Receiving stolen property is a Class A misdemeanor unless the property involved has a value of one hundred fifty dollars or more, or the person receiving the property is a dealer in goods of the type in question, in which cases receiving stolen property is a Class C felony.

■ Section 570.080 was intended to replace § 560.270, RSMo.1969, and was derived from § 233.6 of the Model Penal Code. *State v. Sours,* 633 S.W.2d 255, 258 (Mo.App.1982). Here, however, we are not concerned with the "single party"—"two party" distinction which was sometimes troublesome under the old statute. Rather, we look to the record for 1) evidence of the requisite intent; 2) evidence that defendant "received" the property, and 3) evidence that defendant knew the property was stolen or believed that it was stolen. We have quoted the penalty section only to show that it is alternatively (disjunctively) worded. The State focussed upon the theft and disposition of the table saw. Mr. Walker testified the saw was "a big nine inch Rockwell table saw." To his knowledge, a used table saw comparable to the one stolen "run around three hundred or better" on December 12, 1981. This evidence was sufficient to establish that the value of the saw was more than $150; in criminal, as in civil cases, an owner of property may, without further qualification, testify to its reasonable market value. *State v. Brewer,* 286 S.W.2d 782, 783–84 (Mo.1956). "Value" as used in § 570.080.3 "means the market value of the property at the time and place of the crime." Mr. Walker's testimony was sufficient to establish the value of the saw as being more than $150 at the time of taking and the crime was properly treated as a Class C felony.

■ Was there evidence of the requisite "purpose"? As used in § 570.080, the word "purpose" is synonymous with "intent." *State v. Jones,* 646 S.W.2d 120, 121, n. 1 (Mo.App.1983). "Deprive" as used in Chapter 570 may mean either (a) "[t]o withhold property from the owner permanent-ly," or (b) "[t]o use or dispose of property in a manner that makes recovery of the property by the owner unlikely." Section 570.010(8)(a) and (c). On redirect, Dardeene testified that after his part in the burglary was discovered, "Mr. Walker said he wouldn't press charges if the saw was returned." Dardeene called the defendant and attempted to recover the table saw. Defendant told Dardeene that he no longer had the saw. This testimony, taken with the evidence that defendant obtained the saw at night at a remote location, was sufficient to indicate an intent to use or dispose of the table saw in a manner which made its recovery by the owner highly unlikely.

■ Was there evidence of "receiving" within the meaning of § 570.080? Both Dardeene and McKenzie testified they loaded the table saw onto the defendant's truck. The defendant thereafter drove away. Section 570.010(11) defines "receiving" to include acquisition of possession, or control over the property. The element of receiving was established.

■ Our final question of sufficiency is whether the defendant knew or believed the table saw had been stolen, as required by § 570.080.1. The testimony given by Dardeene and McKenzie was that they told the defendant they were going to steal the saw. That evidence was sufficient to show that the defendant knew the saw was stolen, and it is of no consequence under § 570.080 that he may technically have been a coparticipant in the actual burglary. *Sours,* 633 S.W.2d at 258. The evidence was sufficient to sustain the judgment of conviction.

The defendant has briefed and submitted five assignments of error in this court. Points 2 and 3 may be conveniently considered together, although we doubt that points 2 and 3 were properly preserved for review.

Points 2 and 3 are based upon and assign error to the trial court's ruling on defendant's motion to limit the State's cross-examination and to exclude evidence that the

defendant was guilty of subordination of perjury in connection with the offense for which he was being tried.

At the time of trial the defendant was also charged with tampering with one of the State's witnesses, specifically, Mr. Walker, from whose tool shed the electric drill and table saw were taken. At the close of the evidence on the first day of trial, defendant asked for an advance ruling on the following questions: 1) Whether, if the defendant elected to testify in his own behalf, he could be cross-examined concerning the alleged subordination of perjury; 2) Whether, if defendant chose to testify in his own behalf, and asserted his privilege against self-incrimination, the State would nevertheless be permitted to offer evidence tending to show the alleged subordination; 3) Whether, if the defendant chose to testify in his own behalf, he would be required to assert his privilege against self-incrimination in the presence of the jury, and 4) Whether, if the defendant chose not to testify, the State would be allowed to offer evidence of subornation on rebuttal, even though the State had offered no such proof as part of its case-in-chief.

After hearing an extended argument, the trial court ruled that: 1) if the defendant decided to testify and invoked his privilege against self-incrimination with respect to the charge of subornation, the State would nevertheless be permitted to show the alleged tampering; 2) even if defendant chose not to testify, the State could introduce evidence of subornation in rebuttal, and 3) if the defendant elected to testify and chose to assert his privilege against self-incrimination, he would be required to do so in the presence of the jury.

Points 2 and 3, as set out in the "Argument" part of the defendant's brief, are in substance that the trial court erred in ruling that defendant could be asked if he had attempted to suborn perjury in connection with the offense charged because this ruling left him with only three alternatives: 1) to admit the commission of a crime not charged under oath; 2) to commit perjury, or 3) to decline to testify at all. Further,

the defendant assigns error to the trial court's ruling that if he chose to testify, but wished to invoke his privilege against self-incrimination, he would be obliged to do so in the presence of the jury.

■ As noted, we are in doubt that the assignments of error directed to the trial court's ruling on defendant's motion are in fact preserved for review. Our courts have held that rulings on preliminary motions to limit or exclude testimony are interlocutory only; the motion itself does not serve as a continuing objection, and unless the movant's objection is renewed when the evidence objected to is offered, nothing is preserved for appellate review. *State v. Evans*, 639 S.W.2d 820, 822[1] (Mo.1982); *State v. Riggs*, 586 S.W.2d 447, 449 (Mo. App.1979); cf. *Douthit v. Jones*, 619 F.2d 527, 538–39[21] (5th Cir.1980). These rulings, and others of the same tenor, have been justified on the basis that an appellate court should not be required to speculate concerning an error which *might* have appeared *if* something else occurred. That consideration is present here, for there is little or nothing in the record to indicate that the defendant would have testified if the trial court's ruling had been favorable, and there is certainly no indication that his testimony would have been something other than alibi, which was testified to by other witnesses and disbelieved by the jury.

Nevertheless, because the trial court's ruling is the basis of three of the five assignments of error presented, we shall consider it briefly.

We are cited to *State v. Dunn*, 577 S.W.2d 649 (Mo.banc 1979); *State v. Pierce*, 595 S.W.2d 748 (Mo.App.1980); *State v. Cleveland*, 583 S.W.2d 263 (Mo. App.1979), and *State v. Clayburne*, 592 S.W.2d 282 (Mo.App.1979). From the rulings in those cases, counsel synthesizes and advances the proposition that a criminal defendant who chooses to testify in his own behalf can be impeached only by showing prior convictions. Particular emphasis is laid on *State v. Cleveland*, 583 S.W.2d 263, 267, where it was held that specific miscon-

duct could not be proved as impeachment by resort to extrinsic evidence of other crimes. The substance of *Dunn*, which is the only case cited that is germane to his appeal, is that:

> ■ Thus, it is seen that although a defendant testifying in his own defense may, as a general proposition, be impeached the same as any other witness, nevertheless, a court should, on objection being made, limit certain cross-examination of a defendant where the cross-examination is technically purely collateral as to general credibility and the nature [of the matter inquired into] is such as to impair the defendant's right to a fair trial on the charge brought against him. This does not apply to prior convictions of criminal offenses.

Id., 577 S.W.2d at 653. We agree with the holdings of the other cases cited. However, when a defendant testifies, evidence of other crimes may be admissible for purposes other than impeachment and the authorities cited simply do not control this case.[1]

■ *Dunn* merely answers, on the facts presented, the broader question raised by defendant's points 2 and 3, specifically: To what extent does a criminal defendant waive his privilege against self-incrimination by becoming a witness in his own behalf? The answer to this question has been the subject of concern to serious students of the law of evidence for many years. See, e.g., McCormick, Evidence § 42, p. 84 (2d ed. 1972); 8 Wigmore, Evidence § 2276(2), p. 459–62 (McNaughton rev. 1961). A general discussion of the subject is well beyond the scope of this opinion, but very broadly expressed, the rule is that specific instances of prior misconduct may be inquired into if that misconduct is relevant to something other than the defendant's credibility, but does not extend to wholly collateral matters—that is, facts affecting his credibility only. 3 Weinstein and Berger, Evidence ¶ 608[07],

p. 608–41 (1982). Whether a particular inquiry involves a wholly collateral matter is a question which cannot be answered on any other than an ad hoc basis. This is not to say there are no other constraints upon the scope of cross-examination of an accused who testifies in his own behalf; it is merely to say that the scope of the waiver of the privilege against self-incrimination is that constraint with which we are concerned here. We agree that a criminal defendant may not be required to be sworn in order to exercise his privilege against self-incrimination; this court has so held. *State v. Norris*, 577 S.W.2d 941, 946–47 (Mo.App.1979).

■ Our Supreme Court has held that a defendant who elects to testify in his own behalf may be contradicted and impeached as any other witness. *State v. Murphy*, 592 S.W.2d 727, 731 (Mo.banc 1979). So, if on direct examination, the defendant refers in a general way to a subject, he may then be cross-examined in detail on that subject. *Murphy*, 592 S.W.2d at 731; *State v. Dalton*, 433 S.W.2d 562, 564 (Mo.1968). It is, of course, difficult if not impossible to lay down a definite rule as to the scope of a defendant who testifies in his own behalf, particularly when, as in this case, defendant gives no indication what his testimony would be. Cf. *State v. McClinton*, 418 S.W.2d 55, 59 (Mo.banc 1967). However, a criminal defendant's waiver of the privilege against self-incrimination extends to other prior misconduct *if* that prior misconduct is relevant to something other than credibility. *Johnson v. United States*, 318 U.S. 189, 195–197, 63 S.Ct. 549, 552–53, 87 L.Ed. 704, 710–711, (1943); *Carpenter v. United States*, 264 F.2d 565, 569–70[3][4] (4th Cir. 1959); McCormick, Evidence § 132, p. 279 (2d ed. 1972); 3 Weinstein and Berger ¶ 608[07], pp. 608–43—608–44 and cases cited n. 12 (1982). Further, as the authorities cited and referred to show, it is immaterial that the defendant has not been convicted

---

1. For a general discussion see Hunvald, Criminal Law in Missouri—Evidence of Other Crimes,

27 Mo.L.Rev. 544 (1962).

of the prior misconduct if that misconduct is relevant for some purpose other than impeachment.

 A criminal defendant's attempt to suborn perjury, either by bribery or by intimidation, is a species of admission by conduct. 2 Wigmore, Evidence § 278, p. 139 (Chadbourn rev. 1979); McCormick, Evidence § 273. It has been held without exception in this State that evidence to show that an accused has attempted to fabricate or procure false evidence or destroy evidence against him is always admissible as showing his consciousness of guilt. *State v. Stapleton*, 518 S.W.2d 292, 297 (Mo.banc 1975); *State v. Seals*, 515 S.W.2d 481, 484[1] (Mo.1974); *State v. Mason*, 394 S.W.2d 343, 344[2] (Mo.1965); *State v. Smith*, 355 Mo. 59, 64, 194 S.W.2d 905, 907[6] (1946); *State v. Mathews*, 202 Mo. 143, 148, 100 S.W. 420, 421[3] (1907). Such evidence is admissible as evidence of the defendant's guilt of the principal facts charged, and may be inquired into upon cross-examination of the defendant. *State v. Christian*, 245 S.W.2d 895, 898–900 (Mo. 1952); *State v. Ayres*, 314 Mo. 574, 580–582, 285 S.W. 997, 998[2, 3] (1926). The fact that a charge of tampering with a witness was pending against the defendant would not preclude the introduction of evidence that he had attempted to suborn perjury. *State v. Smith*, supra, 355 Mo. at 64, 194 S.W.2d at 907.

The trial court properly denied the defendant's motion in limine to exclude evidence of defendant's attempt to suborn perjury and to limit his cross-examination, and what we have said disposes of his interrelated points 2 and 3.

The defendant further asserts that the trial court erred in allowing the State to produce evidence of defendant's attempted subornation of perjury in rebuttal. One Daily Doss, who knew the defendant because Doss' brother's wife was defendant's wife's sister, testified that the defendant asked him to approach Mr. Walker to see if Mr. Walker would accept the sum of $500 to withdraw his criminal complaint. This assignment of error is also without merit. The fact that the evidence of attempted subornation could or perhaps should have been presented as part of the State's case-in-chief did not preclude its being presented as rebuttal. *State v. Hoyel*, 534 S.W.2d 266, 269–70 (Mo.App.1975).

We have examined the other two assignments of error; we consider them to be without merit, but if the trial court erred in the respects alleged, it was not such error as would materially impair the defendant's right to a fair trial on the merits.

We find no error in any respect briefed and presented to this court. Accordingly, the judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.