THE STATE v. ALLEN AYRES, Appellant.

Division Two, May 28, 1926.

1.  **DEFENDANT AS WITNESS: Cross-Examination: Matters in Chief: Impeachment: Questions Pertaining to Subject.**  The provision of the statute (Sec. 4036, R. S. 1919) limiting the cross-examination of defendant to matters referred to in his examination in chief is followed by the qualification that he may be contradicted and impeached the same as any other witness; and "matters referred to in his examination in chief" mean the things about which he testifies. If in his examination in chief he refers in a general way to a subject, he may on cross-examination be examined in detail as to that subject. Where defendant was charged with manufacturing intoxicating liquor, and on his direct examination testified that he did not have anything to do with the manufacture of liquor at the

State v. Ayres.

place named in the indictment, furnished no money for it, owned
none of the equipment used in making the corn whiskey and never
furnished any material that went into the manufacture of liquor, it
was proper to ask him, on cross-examination, if he had not, just
prior to the election, asked the candidate for prosecuting attorney
what his attitude was going to be if elected, and stated in the con-
versation that he and another were running a still out there, could
sell sixty gallons of whiskey a week, and would pay him five hun-
dred dollars to let them know when to quit; and upon his denial,
to prove that he did make the statement.

2. ———: ———: Misconduct of Prosecuting Attorney: Lugging in
Hurtful Word. Where the motion for a new trial does not complain
of the misconduct of the prosecuting attorney in any respect, in the
trial of a defendant charged with the manufacture of corn whiskey,
wherein he has testified in chief that he had never manufactured
liquor, it will not be ruled that the prosecuting attorney was guilty
of misconduct in asking him on cross-examination if he had not
said to a certain witness that he and another "are running a still
out there," whereas the witness, introduced to contradict his nega-
tive answer, said nothing about a still.

3. INTOXICATING LIQUOR: Manufacture: Sufficient Evidence: Un-
explained Incriminating Facts. About eight o'clock in the evening
of November 15th, one Milstead drove up to an old house on a farm
occupied by one Noah, and spoke to Noah's wife, and when she came
to the door told her to "tell those fellows to come out and help
carry in this stuff." Some one came out, and a sack was carried in.
The house being immediately searched, sacks were discovered, one
of them containing corn chops. A large quantity of mash, corn
whiskey and equipment for its manufacture, some on the first floor
and some on the second floor, were found. Several gasoline stoves
were in operation. An opening was discovered in the ceiling up-
stairs, where the plastering had been knocked off; an officer climbed
up, and found defendant hiding in the attic, and brought him down.
He denied that Milstead was there; later the sheriff found Milstead
hiding in the same attic. Defendant was seen making visits to the
place a number of times within two months before the raid; he
traveled by a private road that led only to the house. He testifies
that he was a buyer of walnut logs, and that on the night of the raid
he drove with Milstead to the house. Just before the election, held
a short time before the raid, he asked the candidate for prosecuting
attorney what would be his attitude if elected, and asked what he
meant, said: "You know what Milstead and I are doing; we can sell
sixty gallons of liquor a week, and there will be five hundred dollars
in it for you if you are elected and will let us go on and give us
notice when to get out." He explained none of the incriminating

circumstances: he did not say that he went to the place to buy logs from Noah; he did not attempt to explain why he hid in the attic, or why he was at the place, or why he told the sheriff that Milstead was not there. *Held*, that the verdict of guilty is supported by substantial evidence.

4. **INCRIMINATING FACTS: Defendant as Witness: Silence: Failure to Explain.** When defendant voluntarily testifies in his own behalf, his right to explain, deny and contradict is as broad as the rules of evidence, and if he does not avail himself of that right, his silence is a significant fact which the prosecuting attorney may use in his argument to the jury, and for a like reason the court may consider his failure to explain incriminating facts tending to show guilt, in determining whether a case has been made for the jury, and he cannot escape the reasonable inference deducible from them by a mere general denial without explanation.

Corpus Juris-Cyc. References: Criminal Law, 16 C. J., Section 1022, p. 540, n. 74 New; 17 C. J., Section 3352, p. 91, n. 79. Intoxicating Liquors, 33 C. J., Section 541, p. 786, n. 50. Witnesses, 40 Cyc., p. 2497, n. 56; p. 2505, n. 99, 2; p. 2558, n. 63; p. 2570, n. 23; p. 2690, n. 97.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*John H. Taylor, O. O. Mettle, L. W. Reed* and *Thos. H. Hicklin* for appellant.

(1)   The court committed error in refusing to give the peremptory instruction requested by the defendant directing the jury to find the defendant not guilty at the close of all the evidence. There is not a scintilla of evidence in the record showing the defendant to be guilty of the offense with which he stands charged. (2)   Error was committed when the prosecuting attorney asked and was permitted to ask the defendant, if on a certain occasion the defendant had ''asked me what my attitude was going to be were I elected prosecuting attorney, and I asked you what you meant and you said, 'You know that Willard and I are running a still out here, that we can sell sixty gallons of whiskey a week and we

will pay you $500 to let us know when we are to quit, that we don't want to get caught' or words to that effect.'' That was an inquiry from the defendant on cross-examination about a matter which he had not testified to in chief and was not permissible. Sec. 4036, R. S. 1909; State v. Bulla, 89 Mo. 598. (3) The only possible portion of the above-quoted question which could possibly justify the court in permitting it to be answered is that part of the question in which the witness was asked as to whether or not he had stated, ''You know that Willard and I are still running a still out here.'' When the prosecuting attorney knew that no such conversation had been had, and he knowingly and deliberately injected that part of the question into the case with a deliberate purpose of prejudicing the jury, although he testified on cross-examination that he ''didn't say anything about a still.'' This conduct of the prosecuting attorney in the trial of this case not only justifies, but requires a reversal of this judgment. State v. Burns, 286 Mo. 671. (4) There was misconduct on the part of the prosecuting attorney in stating: ''There was one matter Mr. Ayres denied and that was the still. I want to prove by Mr. Selby that this was the one he was convicted of.'' And there was error on the part of the court in failing to reprimand the prosecuting attorney. (5) The evidence does no more than create a suspicion that defendant was guilty as charged. A conviction will not be sustained under such circumstances, however strong the suspicious circumstances might be. State v. Scott, 177 Mo. 673; State v. Ballard, 104 Mo. 637; State v. Pinto, 579 S. W. 146; State v. Woodson, 175 Mo. App. 393; State v. Ridge, 275 S. W. 60; State v. Elmer, 267 S. W. 934; State v. Pope, 296 S. W. 413; State v. Dildine, 269 S. W. 654.

*North T. Gentry*, Attorney-General, and *Harry L. Thomas* and *A. B. Lovan*, Special Assistant Attorneys-General, for respondent.

(1) The evidence was sufficient, the circumstances of defendant's presence at the scene of the crime de-

stroying every reasonable possibility of his innocence. State v. Bennett, 270 S. W. 295; State v. Gatlin, 267 S. W. 797. (2) There is no merit in appellant's assignments of error which relate to the cross-examination of the defendant as to his conversation with a witness with reference to his prior operation of a still. The appellant complains that it finally developed in the testimony that the defendant did not refer to a still in his conversation. But according to the testimony of the witness, the defendant did say, "You know what Willard and I are doing? We are selling sixty gallons of liquor a week, and there will be $500 in it for you if you are elected and will let us go on and give us notice when to get out." The defendant on direct examination had denied that he had had anything whatever to do with the operation of the still that was located in the house where the defendant was found and arrested. Therefore it was competent to cross-examine him as to what he might have said with reference to manufacturing liquor. The fact that he did not mention a still is immaterial, because he went on to say in the conversation proven that he could sell sixty gallons of liquor a week. State v. Edelen, 231 S. W. 585; State v. Lemon, 263 S. W. 188. (3) Evidence that the defendant said nothing in explanation of the ownership of the stills or of his presence at the stills at the time of his arrest was properly admitted in view of his later denial of participation in the crime. His explanation from the witness stand had all the earmarks of being an afterthought.

WHITE, J.—This is a companion to the case of State v. Milstead, 315 Mo. 1. Defendant was convicted January 9, 1925, in the Circuit Court of Livingston County charged with manufacturing intoxicating liquor—corn whiskey. The facts fully stated in the case of State v. Milstead are almost the same as in this case. It is necessary only to mention some of them here.

About eight o'clock P. M., November 15, 1924, Dean Leopard, prosecuting attorney; Frank Gildow, sheriff,

and H. B. Dilley, deputy sheriff, with two other men, went after dark to a farm near Gallatin in Daviess County, occupied by Harry Noah. They approached and concealed themselves near a two-story building fromerly used as a dwelling. Presently a car drove up and they recognized the voice of Willard Milstead speaking to Mrs. Harry Noah, who came to the door of the building. Milstead said: "Tell those fellows to come out and help carry in this stuff." Then further: "They brought in old Bill Cummings and two stills from Pattonsburg today." Someone came out and a sack was carried into the house. Afterwards sacks were discovered in the house, one of them containing corn chops. The sheriff and his companions broke into the house and found a large quantity of mash, corn whiskey and equipment for its manufacture. Several gasoline stoves were in operation. Some of this stuff was found on the first floor and some on the second floor of the house. An opening was discovered in the ceiling up stairs, where the plastering had been knocked off. The deputy sheriff climbed up, found Ayres hiding in the attic, and brought him down. Ayres denied that Milstead was there. Later the sheriff found Milstead hiding in the same attic.

Defendant was seen a number of times within two months before the raid, making visits to the Noah place. Some of the witnesses describe those visits by his yellow car which was frequently seen there, though they did not know who drove the car. The Noah place was on a private road which led only there, so that anyone passing on that road was known to be going to the Noah place.

The defendant testified in his own behalf that he was a buyer of walnut logs; that he drove from Gallatin to the Noah place with Milstead the night he was arrested. On cross-examination it was shown that he had been convicted of the possession of implements used for the manufacture of intoxicating liquor. The State offered evidence tending to show that he attempted improperly to influence the attitude of the former prosecuting attorney in relation to his duty in connection with the unlawful

manufacture of liquor. Evidence was offered to show that the defendant possessed a good reputation for truth and veracity and for morality. The alleged errors on which the defendant seeks a reversal as they appeared in the motion for new trial are: Failure of evidence to make out a case against him; the admission of incompetent evidence; the exclusion of proper testimony offered by the defendant, and errors in the giving of instructions.

I. It is first complained that the court erred in Cross-Examination: allowing the defendant to be examined Matters in Chief. upon matters not testified to in chief.

Defendant Ayres took the stand, and in chief, after stating that he went to the Noah farm on the night of the arrest, with Milstead, was asked if he owned any of the paraphernalia described in the evidence and used in the manufacture of intoxicating liquor at the Noah farm, and said that he did not. He said he had never operated the stills there at any time, nor had anything to do with them; that he had never furnished any of the materials that went into the manufacture of intoxicating liquors; that he had never let Mr. Noah or anybody have any money. On cross-examination he was asked this question by Mr. Gillihan:

"Q. I will ask you, Mr. Ayres, if on the west side of the Square at Gallatin, just prior to the election, if you didn't stop me there where the buildings were burned down, and ask me what my attitude was going to be if I was elected prosecuting attorney, and I asked you what you meant, and you said, 'You know that Willard and I are running a still out here, that we can sell sixty gallons of whiskey a week, and we will pay you five hundred dollars to let us know when we are to quit, that we don't want to get caught,' or words to that effect?"

He answered evasively, admitting a conversation, but denying that anything was said about $500 or a distill.

In rebuttal Mr. L. B. Gillihan, former prosecuting attorney, testified to a conversation with the defendant he

had had just before the election of 1924., The conversation he related was as follows:

"A.  He met me on the west side of the Square there where some buildings had been burned down, and he asked me, he says, 'Gillihan, what is going to be your attitude on this liquor question if you are elected?' I says, 'What do you mean, Hairpin?' We call him 'Hairpin,' that is his nickname, 'Hairpin.' 'Well,' he says, 'you know what Willard and I are doing.' 'And,' he said, 'we can sell sixty gallons of liquor a week, and we will promise you that there will not be a drop of it sold in Daviess County, and there will be five hundred dollars in it for you if you are elected and will let us go on and give us notice when to get out.' That is what he told me."

The objection to that evidence was that the matter was not inquired into in the examination of Ayres in chief, and therefore the evidence of Gillihan as to the conversation with defendant was not competent in rebuttal for the purpose of impeachment.

The provision in Section 4036, limiting the cross-examination of a defendant to matters referred to in his examination in chief, is followed by the qualification that he may be contradicted and impeached as any other witness. The "matter referred to in his examination in chief," means the things he testifies about. [State v. Foley, 247 Mo. l. c. 638; State v. Lemon, 263 S. W. l. c. 188; State v. Ivy, 192 S. W. l. c. 736.]

The elucidation of the subject in the Foley case shows the limits of such examination. If the defendant, in chief, in a general way refers to a subject he may be examined in detail as to that subject. Where he states a fact in relation to his actions, the prosecutor may inquire as to particular circumstances which would throw light on that fact. In this case he testified in chief that he did not own, nor have anything to do with the manufacture of liquor at the Noah place; that he furnished no money for it; owned none of the material or equipment used in it; *that he never furnished any material that went into the manufacture of liquor.* That statement was compre-

hensive enough to cover the circumstance which was the subject of the conversation with Gillihan. The cross-examination and statement of Gillihan were proper.

II. In this connection appellant complains of alleged misconduct on the part of the prosecuting attorney, because in his cross-examination of Ayres he asked Ayres if he didn't state to him: "You know that Willard and I are running a still out there," whereas the prosecutor, when on the stand, admitted that Ayres said Misconduct: nothing about a still, but said: "You know Prosecuting Attorney. what Willard and I are doing." The complaint is that the prosecutor lugged a still into the question when he knew nothing was said about a still in his own statement, for the purpose of influencing the jury in reference to a still. The trouble with this assignment is that the motion for new trial does not complain of misconduct on the part of the prosecutor in that nor in any other respect.

III. It is further complained that the court erred in permitting the prosecutor, in cross-examining character witnesses offered by defendant, to ask such witnesses what was the reputation of defendant for morality in the community in which he lived. We have held that such evidence is admissible when a defendant offers himself as a witness. It is not an attack upon his character as a defendant, but upon his credibility as a witness. [State v. Richardson, 194 Mo. l. c. 343; State v. Baird, 288 Mo. l. c. 67; State v. Ross, 267 S. W. l. c. 854; State v. Shobe, 268 S. W. l. c. 82.]

IV. The principal argument of appellant is directed to the action of the trial court in overruling his demurrer to the evidence. It is strongly insisted that a case was not made out. The circumstances pointing to defendant's guilt are as follows:

He made frequent visits to the Noah place.

He went with Milstead on the night of the arrest, and in the car something was hauled and unloaded, and nothing that resembled what was carried in was found in the house except a sack of chops and sacks of bottles.

The defendant hid away in the attic. It is said that he did not wish to be found on the place for he might have been buying whiskey.

He knew that Milstead was hidden in the same place with him, but told the officers that Milstead was not there.

The statement made to the candidate for prosecuting attorney, that the latter knew what he and Milstead "were doing," and they could sell (not that they had sold) a large quantity of liquor every week; that there was $500 in it for the prosecutor (if elected), if he would let them "go on" and give them notice when to "get out." He did not use the word "still" in that instance. It is plain from the facts developed at the trial that in associating himself with Willard Milstead in that conversation he referred to the operations at the Noah place. The conversation occurred just before the election in November, and the raid took place November 15th. Ayres's visits to the place were observed from September until that time. He wanted to "go on" with what he and Willard were "doing" until told to "get out." There was $500 in it for the prosecutor if the latter would give them notice when to get out. What were they "doing" that they wished to go on with, that would enable them to sell sixty gallons of liquor a week, unless it was the manufacture of the liquor? What else did he expect to "get out" of when notified?

A damaging circumstance against the defendant is his utter failure to explain the incriminating circumstances shown against him. He said he was in the business of buying logs, but he did not say that he went out to see Noah about buying logs. He did not attempt to explain why he hid away under the rafters, or why he told the sheriff that Milstead was not there. If he had been there to purchase liquor or to buy logs, it would have been easy for him to have said so when he was on

the stand, or otherwise to have accounted for his being there, and his attempt to conceal himself from the observation of the sheriff or to explain why he wanted to know the attitude of the candidate for prosecuting attorney "about some things" as he testified to.

Section 4037 provides that if a defendant shall not avail himself of his right to testify, his failure shall not raise a presumption of guilt, "nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." In this case, however, the defendant did testify, and that section does not protect a defendant who voluntarily goes on the stand. [State v. Larkin, 250 Mo. 218, l. c. 238 to 245; State v. Prunty, 276 Mo. l. c. 377; State v. Corrigan, 262 Mo. l. c. 209; State v. DePriest, 288 Mo. l. c. 469; State v. Grubb, 201 Mo. l. c. 613; State v. English, 274 S. W. l. c. 472.]

In the Larkin case, supra, FARIS, J., who wrote the opinion, reviewed the authorities on the subject at length and held that the failure of a *defendant who takes the stand as a witness in his own behalf* to deny or explain incriminating facts or statements does not come within the protection of Section 4037, which forbids a comment by the prosecutor on the failure of defendants to testify. It was held that in absence of a statute a defendant witness had only the constitutional protection against self-incrimination. Section 4036 protects him in cross-examination, and Section 4037 applies only when he does not testify at all. The opinion (l. c. 244) says: "His right to explain, deny, and contradict is as unlimited as the rules of evidence, and as broad as the issues pertinent to the matter under inquiry."

Then, if he does not avail himself of that right, his silence is a significant fact which the prosecuting officer may use in argument against him. For a like reason the court may consider defendant's failure while on the stand to explain facts which tell against him in determining whether a case has been made out. Therefore, in this case we may consider that the defendant made fre-

quent visits to the place where the illegal manufacture was going on; that he went there with Milstead who carried with him at the same time some of the stuff probably used in the manufacture; that he hid from the officers himself and endeavored to conceal Milstead; offered no explanation whatever of his presence there, nor of other incriminating facts.

We do not mean to say that a defendant may be convicted without affirmative proof of guilt. We say only that the circumstances proven make out a submissible case, and the failure of defendant to explain damaging facts is a circumstance tending to show. guilt, just as is his silence out of court when accused of a crime, if the circumstances require him to speak.

The defendant on the stand ventured a general denial, apparently hoping by that means to impress the jury and escape the consequences of his failure to explain the facts which contradict his statement.

We think the evidence was sufficient to submit to the jury the question as to whether the defendant was guilty of participating in the manufacture of liquor.

The judgment is accordingly affirmed. All concur.