**STATE of Missouri, Respondent,**

v.

**Donald Lee BEISHIR, Appellant.**

No. 47057.

Supreme Court of Missouri,
Division No. 1.
March 14, 1960.

Raymond A. Bruntrager, St. Louis, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

By indictment filed in the Circuit Court of the City of St. Louis on November 5, 1957, defendant Donald Lee Beishir, William Homer Stegall and Vincent Gendron were jointly charged with the crime of robbery in the first degree by means of deadly and dangerous weapons. The indictment also charged two prior felony convictions of Beishir and Stegall and one prior conviction of Gendron, under the Second Offense Act, Section 556.280 RSMo 1949, V.A.M.S., prior to its amendment in 1959.

Upon separate trial held in February, 1958, defendant was found guilty as charged, with the further finding of his prior conviction, and his punishment was assessed at imprisonment in the State Penitentiary for life. He has appealed from the judgment rendered in accordance with the verdict, assigning error: (1) in permitting cross-examination of him as to matters not referred to in his examination in chief; (2) in the giving of Instruction V on alibi; and (3) in permitting the introduction in evidence by the State of portions of statements of witnesses Mr. and Mrs. Owen Sells, other portions of which had been introduced in evidence by defendant for the purpose of impeachment.

The evidence in behalf of the State supports a finding of the following facts: About 6:00 p. m. on August 22, 1957, defendant and Stegall entered Sells Food Shop, owned and operated by Mr. and Mrs. Owen Sells, in the City of St. Louis. Defendant pointed a pistol at Mr. Sells and Stegall pointed one at Mrs. Sells. The pistol pointed by defendant at Mr. Sells was long, dark-colored, shiny, had a long barrel, and was similar in appearance to State's Exhibit 2, a 38-caliber revolver shown to Mr. Sells at the trial and introduced in evidence by the State. The pistol held by Stegall was black, had a "real short barrel" and was similar in appearance to State's Exhibit 3, shown to Mrs. Sells at the trial and introduced in evidence by the State. The two men, defendant and Stegall, marched Mr. and Mrs. Sells to a back room of the shop and forced them to lie face downward on the floor. Mr. Sells heard the cash register open, and either the defendant or Stegall took Mr. Sells' wallet, containing several one-dollar bills, from his hip pocket. A woman customer, who had entered the store about that time, saw the third man, Gendron, standing at the cash register, which was open. Gendron directed her to come forward and, at Gendron's direction, she started to go into the back room. As she did so, she saw Gendron take money from the cash register. Defendant and Stegall emerged from the back room and the three men left the store and escaped in an automobile. Upon examination of the cash register, Mr. Sells found that $221.29 had been taken from it.

About 3:30 on the morning of September 4, 1957, defendant was arrested at 5841 Waterman as he stood by the side of a 1956 Oldsmobile, in which Stegall and Gendron were seated. A 38-caliber pistol State's Exhibit 2, was found in the waistband of defendant's pants and a snub-nosed 38-caliber revolver, State's Exhibit 3, was found on the floor in front of the front seat of the automobile. Additional details of the State's evidence will be stated as necessary to determination of the errors alleged.

On direct examination, defendant testified that in 1951 he had been convicted of statutory rape and in 1953 he had been convicted of burglary and larceny, for which he had served terms of imprisonment in the State Penitentiary; that on the date of the alleged holdup of Sells Food Shop, August 22, 1957, he was employed at Roton Auto Sales, 4623 Natural Bridge, where he had remained until 7:00

o'clock p. m.; and that he did not "ever commit a holdup" of Sells Food Shop. On cross-examination, the State was permitted, over objection of defendant, predicated solely upon the ground that such matters were "outside the scope of direct examination", to interrogate defendant as to his arrest with Stegall and Gendron at 5841 Waterman on the morning of September 4, the search of his person and the taking of a loaded pistol, State's Exhibit 2, from him at that time and the finding of a pistol, State's Exhibit 3, in the automobile in which Stegall and Gendron were seated.

Defendant insists that the cross-examination above set forth was violative of the provisions of Section 546.260 RSMo 1949, V.A.M.S., subjecting him, after he elected to testify in his own behalf, to cross-examination "as to any matter referred to in his examination in chief", and to contradiction and impeachment as any other witness in the case. In support of that contention, he has cited State v. Pfeifer, 267 Mo. 23, 183 S.W. 337, 339–340; State v. Edelen, 288 Mo. 160, 231 S.W. 585, 587 et seq.; State v. Nicholson, 337 Mo. 998, 87 S.W.2d 425, 426; State v. Culpepper, 293 Mo. 249, 238 S.W. 801, 803–804. The Edelen, Nicholson and Culpepper cases are readily distinguishable upon the facts and the method and subject matter of the cross-examination of which complaint was there made. However, the Pfeifer case cannot be so distinguished in principle from the case at bar and it must be considered.

In the Pfeifer case, 183 S.W. 337, 339, defendant, charged with sodomy, categorically denied on direct examination that "he had committed the crime charged." On cross-examination, he was interrogated as to where he was on the night the assault was made on the prosecuting witness; where he was at 4:00 o'clock on the morning following that assault; where and when he went to bed; at what places he had been and with whom; whether he knew Katz, Gaussman and Long, who also

had assaulted the prosecuting witness; how long he had known them, and whether he had seen them on the night in question, etc. The court held these questions to be in contravention of the statute, saying of them, loc. cit. 340:

"It is urged that defendant may not simply deny his acts, and then refuse to go into details to contradict his denial when the state cross-examines him, and that this is what is meant in State v. Miller, supra [156 Mo. 76, 56 S.W. 907], where it is substantially said that the state is not to be confined to a categorical reiteration of defendant's examination in chief. But even a departure from categorical reiteration does not comport a latitude as broad as the entire case, as was here present. Moreover, such an argument palpably begs the question and assumes the guilt of defendant, instead of proving his guilt as the object of a trial is; for, if defendant were perchance innocent, the moment he says he did not commit the offense with which he is charged, and the moment he says he did not see the prosecutrix at all that night, he has told all he knows about the case. To assume that he is falsifying and that he does know more, is to assume his guilt and beg the question, and to an extent compel him to convict himself. Such procedure and such assumption, aside from the statute supra, may be logically excusable in trying a guilty man, but not even excusable in logic in trying an innocent one."

We cannot agree with the conclusion reached in the Pfeifer case. In express terms, the statute subjects every defendant who elects to take the witness stand in his own behalf to cross-examination *"as to any matter referred to in his examination in chief,"* and to contradiction and impeachment *"as any other witness in the case."* Consequently, it is clear that when the defendant, as in the instant

case, testifies as a witness in his own behalf directly with reference to the crime for which he is on trial by making a sweeping denial of the commission of such crime, he is liable to cross-examination, contradiction and impeachment as any other witness in the case.

In fact, the Pfeifer case has long since been repudiated by both Divisions of this Court. See State v. Kaufman, Mo., 254 S.W.2d 640, loc. cit. 641, and authorities therein cited, wherein Division One said:

"It is well settled that a defendant who testifies may be impeached by proof of prior inconsistent statements. * * * Moreover, the statute 'does not mean that a defendant can take the stand and in answer to one or two well-prepared interrogatories sweep away the whole structure of the state's case, and then remain immune from a cross-examination on the issue thus tendered.' When 'The questions put to him involved practically the whole issue tendered by the indictment, * * * he cannot be heard to complain that the state proceeded to cross-examine him on these matters. * * * Cross-examination, as used in the statute, does not mean a mere categorical review of the matters stated by defendant.' * * * Furthermore, as said in State v. Ayres, 314 Mo. 574, 285 S.W. 997, 998, in admitting a prior statement about a matter inconsistent with defendant's testimony in chief: 'The "matter referred to in his examination in chief" means the things he testifies about. * * * If the defendant in chief in a general way refers to a subject, he may be examined in detail as to that subject. Where he states a fact in relation to his actions, the prosecutor may inquire as to particular circumstances which would throw light on that fact.' So, in this case, defendants' sweeping denial of the theft was a statement of fact in such a general way as to open for cross-examination in detail the whole

subject of whether or not they committed it; and made their prior inconsistent statements that they did so admissible for their impeachment."

See also the recent case of State v. Scown, Mo., 312 S.W.2d 782, 786 et seq., wherein Division Two criticized the decision reached in the Pfeifer case and approved the interpretation placed upon the statute by Kaufman and the cases cited therein.

■ Bearing in mind the evidence elicited by the State to the effect that defendant, in company with Stegall, held up Mr. and Mrs. Sells; that in accomplishing the holdup defendant held a dark-colored, shiny, long-barreled pistol, similar to State's Exhibit 2, and Stegall held a black, short-barreled pistol, similar to State's Exhibit 3; that during the holdup Gendron rifled the cash register; and that all three of them escaped in the same automobile: it was clearly relevant and competent for the State to develop, on cross-examination of defendant, the fact of their being together when arrested and their possession of two pistols similar to those used in the holdup in corroboration of the testimony of the State's witnesses.

■ In this same connection, defendant also asserts that the facts elicited on cross-examination of defendant with reference to his possession of the pistol, State's Exhibit 2, when arrested were incompetent and prejudicial in that they tended to show him guilty of another crime, to wit: carrying a concealed weapon. Suffice to say that no such objection was made at the trial. The mere fact that relevant and otherwise competent evidence tended to prove him guilty of another crime did not, in the absence of specific objection on that ground, make it erroneous. State v. Medley, 360 Mo. 1032, 232 S.W.2d 519, 525; State v. Harris, Mo., 295 S.W.2d 94, 96. The assignment is overruled.

■ Instruction V, of which defendant complains, reads as follows:

"The defendant in this case has interposed as a defense what is known in law as an alibi, that is, he asserts that even if the offense was committed as charged, he was at the time of the commission thereof, at another and different place than that at which such offense was committed, and, therefore, was not and could not have been the person who committed the same. Now, in this connection, you are instructed that you should acquit the defendant unless the evidence in the case, taken as a whole, including that of alibi, satisfies you of defendant's guilt beyond a reasonable doubt."

The foregoing instruction was held not erroneous in State v. Wilson, Mo., 248 S.W.2d 857, 860. Defendant insists, however, that it fails to inform the jury that defendant's presence at the scene of the crime must be proven beyond a reasonable doubt. When Instruction V is read in connection with Instruction VI, which sets forth in approved form the law defining the presumption of innocence of defendant and the requirement that he be acquitted unless his guilt be established beyond a reasonable doubt, it could not be misunderstood or misleading. Under the evidence and the instructions in this case, there is no conceivable theory under which the jury could have found defendant guilty if it entertained a reasonable doubt of his presence at the scene of the crime. The assignment is overruled.

 At the trial, Mr. and Mrs. Sells testified that, at the direction of defendant and Stegall, they were lying face downward on the floor when they *heard* a *third man* open the cash register. Defendant sought to impeach that testimony by producing Police Officer Herkel who testified that 12 days after the robbery Mr. and Mrs. Sells gave him a written statement reciting in part that *defendant* rifled the cash register. The State was thereupon permitted to show other portions of the statement, one of which was to the effect Mr. and Mrs. Sells had said that *a third man* (Gendron), *whom they could not identify, came to the rear of the store and stayed with Stegall while defendant rifled the cash register*. The trial court has a broad discretion in determining the extent to which additional portions of a statement may be read into evidence to show the context of and circumstances under which the impeaching portion was made for the purpose of minimizing its impeaching force. Affronti v. United States, 8 Cir., 145 F.2d 3, 7–8; Peppers v. St. Louis-San Francisco Ry. Co., 316 Mo. 1104, 295 S.W. 757, 762. The portions which the State was permitted to read in rebuttal tend to show that Mr. and Mrs. Sells actually were unable to see who had rifled the cash register and that their statement to Officer Herkel that defendant rifled it was at most a mistaken conclusion on their part. Aside from the impeaching portion read to the jury by defendant, nothing was contained in the portions read in rebuttal that was contrary or additional to the testimony given by Mr. or Mrs. Sells at the trial. The trial court did not err in admitting the additional portions of the statement.

The judgment is affirmed.

All concur.