**STATE of Missouri, Plaintiff-Respondent,**

v.

**Gloria A. DANNER, Defendant-Appellant.**

No. 25783.

Missouri Court of Appeals,
Kansas City District.

Jan. 19, 1973.

Donald E. Raymond, Howard W. Bevins, Raytown, for defendant-appellant.

James G. Lauderdale, Pros. Atty., Lafayette County, Lexington, for plaintiff-respondent.

Before SHANGLER, C. J., PRITCHARD and WASSERSTROM, JJ., and FRED E. SCHOENLAUB, Special Judge.

FRED E. SCHOENLAUB, Special Judge.

Defendant was convicted by a jury of failing to comply with the rules of the road by following too closely and was fined one hundred dollars. Section 304.017 RSMo 1969, V.A.M.S. Motion for a new trial was overruled and defendant appeals.

In her brief defendant alleges that there was insufficient evidence to sustain the conviction and that the trial court erred in permitting the State, over objection, to introduce evidence of her general reputation.

All of the participants in the occurrence out of which this charge arose are related either by blood or marriage. The transcript, consisting of over three hundred pages of testimony from seventeen witnesses, contains considerable conflict, but clearly reveals a feud of long standing within the Danner family culminating in this unfortunate incident. Donald Pangborn, a brother-in-law of defendant's husband, testified that he was returning to his home in Napoleon, Missouri, on Highway 224 and that, as he slowed for a dip in the highway, his truck was struck from the rear by a 1966 Pontiac station wagon

driven by defendant. His truck sustained only minor damage but a five gallon gasoline can, attached to the rear of the truck, was ruptured causing gasoline to be sprayed onto the front of defendant's car. He further testified that he removed the can from the truck and threw it into a ditch, after which defendant started backing up the highway. He then told Jimmy Danner, a brother of both his wife and defendant's husband, to follow and get defendant's license number. Jimmy Danner then followed the defendant in the Pangborn truck. His pursuit of defendant was also in reverse. Defendant testified that she did not strike the Pangborn truck, but was forced to stop when the truck stopped on the highway ahead of her and a 1970 Maverick, driven by Brenda Danner, her husband's sister, stopped directly behind her. She testified that Donald Pangborn then started pouring gasoline on the front of her car. This was accompanied by threats from Donald Pangborn, his wife Karlan, who arrived in another car, Jimmy Danner and Brenda Danner that her car was going to be burned and she and her four children shot. She further testified that she backed into the Maverick, pushing it off the highway, and continued backing up the highway with the Pangborn truck in pursuit. While so traveling the front of her car was struck numerous times by the Pangborn truck. The case can be decided without further detailing the events of this day and without ruling on the merits of the State's case.

Defendant called numerous witnesses and testified as a witness in her own behalf. In rebuttal the State called Sheriff Gene Darnell and Deputy Sheriff James Donley, who testified concerning defendant's reputation. The pertinent parts of their testimony follow:

"DIRECT EXAMINATION OF SHERIFF GENE DARNELL

BY MR. LAUDERDALE

"Q  Are you personally acquainted with the defendant, Gloria Danner?

A  Yes, sir, I am.

\*    \*    \*    \*    \*    \*

"Q  Are you acquainted with her reputation in the community?

MR. BEVINS: Just a moment.

(Whereupon, the following discussion was had at the Bench between Court and counsel outside the hearing of the jury:)

MR. BEVINS: Your Honor, I object to this line of questioning on the grounds that it is an improper issue to be inserted; there has been no issue of reputation opened in the proceedings.

THE COURT: Well, it is my understanding this is proper evidence for any witness who takes the stand.

MR. BEVINS: Well, it is my impression that you don't need a character witness because there has been no character witnesses offered in behalf of the Defendant. I'm objecting only for this reason, and also for the reason it is obviously not rebuttal.

THE COURT: The objection will be overruled.

(Whereupon, the following proceedings were had in open Court and entered of record:)

Q  BY MR. LAUDERDALE: Do you remember the question, Mr. Darnell?

I said: Are you acquainted with her reputation in the community?

A  Yes, sir

Q  And your answer is—

A  Yes, sir

Q  I'll ask you now: In your judgment, is that reputation good or bad?

A   She is known as a troublemaker.

MR. BEVINS: I object, Your Honor. That answer is not responsive to the question.

THE COURT: The objection is sustained.

MR. BEVINS: And I ask that it be stricken.

THE COURT: It is ordered stricken.

MR. LAUDERDALE: No other questions.

\*   \*   \*   \*   \*   \*

BY MR. LAUDERDALE

"Q   Your answer to the question was that you had a judgment as to whether her reputation in the community was good or bad, and I ask you if it is good or is it bad in your judgment?

A   I would say it is bad.

DIRECT EXAMINATION OF DEPUTY SHERIFF JAMES DONLEY

BY MR. LAUDERDALE

"Q   Are you personally acquainted with Gloria Danner?

A   Yes, I am.

Q   And how long have you known her?

A   Approximately three and a half years.

Q   Have you known her at any time while she was here at Lexington?

A   Yes.

Q   And are you acquainted with her by your own knowledge or by what somebody else may have told you about her in regard to her reputation in this community?

A   Yes, I am.

MR. BEVINS: We have a double barrel question. He is asking if he is acquainted with her individually or as a result of hearing from others, which way is it? I object to the form of question.

THE COURT: Sustained.
Q   BY MR. LAUDERDALE: Are you acquainted with her reputation in the community?

A   Yes, I am.

Q   Is this reputation in your judgment good or bad?

A   In my judgment it is bad."

Defendant contends that this testimony constituted an attack on her general reputation and that its effect was to impeach her not as a witness but as a defendant. In State v. Ferguson, 182 S.W.2d 38 (Mo. Sup.1944), l.c. 42, the Supreme Court of Missouri stated:

"[W]e have repudiated the so-called 'morality rule' when the defendant testifies but does not offer evidence in support of his reputation. In such instances the state may not attack the defendant's reputation or impeach him except as to his reputation for truth and veracity, as that reflects on his credibility as a witness. State v. Williams, 337 Mo. 884, 87 S.W.2d 175, 100 A.L.R. 1503."

■   Defendant offered no evidence in support of her reputation. The State was, therefore, limited on rebuttal to evidence concerning her reputation for truthfulness and veracity as that might reflect on her credibility as a witness. Its evidence went beyond this.

■   The State contends, however, that the defendant did not make a proper and

timely objection, thereby preserving no point for appeal, and further that defendant waived any possible error when she cross-examined witnesses Darnell and Donley concerning her reputation. The cases cited by the State support its position that without proper and timely objection, no point is preserved for appellate review. In State v. Baber, 297 S.W.2d 439 (Mo.Sup. 1956), a character witness for the defendant was cross-examined as to defendant's prior arrests. An objection was overruled and defendant on appeal claimed the evidence was improperly admitted. Defendant, however, had failed to object when the same question was asked an earlier witness. In State v. Balle, 442 S.W.2d 35 (Mo.Sup. 1969); State v. Collins, 383 S.W.2d 747 (Mo.Sup.1964); State v. Beishir, 332 S.W. 2d 898 (Mo.Sup.1960); and State v. Simone, 416 S.W.2d 96 (Mo.Sup.1967), no objection or motion to strike was made at trial. In all of these cases it was held that defendant's failure to object to the admission of such evidence at trial waived any error. Here, however, defendant objected when Sheriff Darnell was first asked if he was acquainted with defendant's reputation in the community, stating as his grounds "that it is an improper issue to be inserted; there has been no issue of reputation opened in the proceedings." The objection was timely made and clearly stated. The trial court erred in overruling it and permitting the injection of defendant's reputation into the case.

The State's contention that defendant waived any error by failing to object further to similar testimony is also without merit, State v. Sanford, 297 S.W. 73 (Mo.Sup.1927), l.c. 77, as is its contention that the error was waived by defendant's attempt to overcome or mitigate the effect of such testimony on cross-examination. State v. Ferguson, supra; State v. Beckner, 91 S.W. 892 (Mo.Sup.1906), l.c. 896.

The judgment is reversed and the cause remanded.