STATE of Missouri, Respondent,

v.

Robert J. GRADO, Appellant.

No. KCD 29096.

Missouri Court of Appeals,
Kansas City District.

Oct. 31, 1977.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 1977.

Clayton A. Chittim, Robert A. Simons, Kansas City, for appellant.

Atty. Gen. John D. Ashcroft, Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment of conviction and sentence to three years' imprisonment entered on jury verdict finding Robert J. Grado guilty of assault with intent to kill without malice. § 559.190, RSMo1969.

At around midnight August 1, 1975, following the conclusion of the annual Mexican Fiesta at the Guadalupe Center in Kansas City, a number of persons had gathered on 23rd Street between Madison and Belleview. Among them were Anthony Rios and his brother Daniel. A pickup truck drove up and the appellant, Robert Grado, and his father got out. According to the state's evidence at the trial, Grado wanted to find out who had "jumped" his brother and he started toward the group uttering profane epithets. According to Anthony Rios, he and several others moved away in order to avoid a confrontation, but appellant followed them and began to berate Anthony's brother. According to Anthony, "Since he was directing all these comments to my brother, I felt maybe I could reason with him and I looked at him, I said, 'Robert, what seems to be the problem here,' you know, 'they told you already nobody jumped on your brother.' And he looked at me and he pulled out his gun and he said, 'Take this, Big Boy.' And he shot me." The bullet struck Anthony in the left wrist. As he started to run, appellant fired again and struck Anthony in the back and a third shot struck him in the hip. Anthony was taken to a hospital and police were called to the scene of the shooting, but appellant departed before they arrived. The state's evidence was that only appellant fired a gun.

The appellant's version of the incident was that he had gone to the Center to look for his mother and brother who had attended the Fiesta. Daniel Rios, with whom appellant had had an altercation over a pool game in June, started pointing his finger at

appellant and told him he wanted to fight. Appellant told Rios that he "wasn't looking for no trouble with anyone." Anthony Rios told appellant: "If you got any problems, take them out on me." Danny pulled a gun when he was about 15 feet from appellant and started walking toward him. Appellant pulled his gun and started running. He fired two or three shots as he ran to his truck and he and his father left in the truck. According to appellant, he heard three or four shots fired from the other gun.

According to appellant, at the time of the difficulty over the pool game, Danny said he would kill him and appellant started carrying a gun because of that threat. Appellant said that at the time of the shooting, "I was trying to get away from him and at the same time trying to protect myself."

The foregoing demonstrates the antipodal version by the state and by the defendant of the occurrence. Other witnesses supported the version of the side by which they were called. The issue of self-defense was submitted and the jury returned the verdict previously noted.

■ On this appeal, appellant's first assignment of error involves the trial court's rulings on objections made to the examination by the prosecutor of appellant concerning consultation with an attorney prior to his arrest and to argument by the prosecutor on that score.

In his cross-examination, appellant stated that he went home after the occurrence, but did not call the police. "I wanted an attorney before I said anything." A question about appellant's concern in that regard was objected to and the objection sustained, with instruction to the jury to disregard the question.

On further cross-examination, appellant said that he stayed home on August 2 and 3. On August 4, he called and checked around about a lawyer. He did not get in touch with a lawyer until the next day, August 5. On August 6, Appellant turned himself in to the police department. This interrogation appears:

"Q Did you have an occasion to talk to any police officers at that time?

"A Just the one on the phone that called me.

"Q Did you ever tell them that this was self-defense and that you were actually shot at?

"A I never made a statement.

"Q You never told them any of this story that you are telling here on the stand today?

"A No, sir."

No objection to this questioning appears in the transcript.

In his closing argument, the prosecutor argued: "I submit to you that the first time self-defense came into the mind of this defendant in this case is when he talked to his lawyer on Monday morning, and that's when he went down." An objection, " * * * [T]hat's not in evidence," was sustained. Out of the hearing of the jury, the defense counsel elaborated: "I think that's a very damaging and prejudicial statement, I request that the jury be discharged. That the first time he thought of self-defense came up after he talked to me, there's no evidence of that and that's very damaging and prejudicial." The court denied a request for a mistrial, but did instruct the jury to disregard the prosecutor's statement.

Relying upon the decision of this court in *State v. Roth,* 549 S.W.2d 652 (Mo.App. 1977), appellant here contends that the trial court erred in allowing the prosecutor to argue that it should infer appellant's guilt from (1) the fact that he consulted counsel before surrendering to the police, (2) the fact that he did not inform the police of his intention to assert the defense of self-defense and (3) the fact that he made no statement in advance of trial "all in violation of appellant's rights under the Fifth and Sixth Amendments of the United States Constitution."

This case is readily distinguishable from *Roth. Roth* holds that a prosecutor may

not argue that guilt may be inferred from the post-arrest silence of a defendant, particularly one who has received *Miranda* warnings. Here the prosecutor's argument was not aimed at post-arrest silence but at pre-arrest activity of the defendant. His argument basically was that if, as appellant testified, he was the innocent victim of an assault, why had he not reported the assault to the police. In the cross-examination of appellant, there was an objected to question about a statement following the arrest of appellant, but no such reference appears in the argument and the assignment of error relates to the argument.

Furthermore, contrary to the situation in *Roth*, the defense objection to the argument was sustained. A mistrial was not ordered, but in view of the objection voiced, the trial court is not to be faulted for failure to invoke the drastic remedy of a mistrial.

*Roth* is not here controlling and appellant has not demonstrated that the trial court's ruling calls for a reversal of his conviction.

■ Appellant next objects to the trial court's ruling sustaining the state's objection to testimony sought to be elicited from David Grado concerning an encounter with the Rioses shortly before the shooting involved in this case.

David Grado, brother of appellant, was the first witness for the defendant at the trial. When he was asked whether or not anything unusual happened to Albert Tinoco at the Fiesta, the prosecutor objected on the grounds of immateriality. Counsel for the defendant stated that he wished to show that, shortly before 12:00 A. M., Albert Tinoco had been arrested for an assault on David Grado which had occurred in June; that, after the arrest of Tinoco and before appellant had arrived on the scene, the Rios brothers threatened David. According to the offer of defense counsel, David Grado had left the Fiesta before his brother arrived.

The prosecutor objected to testimony going into the reason for Tinoco's arrest. He stated that he would have no objection to testimony of the fact of the arrest.

When defense counsel again asked whether or not anything unusual happened to Tinoco, the witness replied that Tinoco "was arrested for assault charge." A prosecution objection to testimony as to the reason for the arrest was sustained whereupon defense counsel repeated the offer to prove that the arrest was for an assault on the witness some two months before. The state's objection to going into the reason for the arrest was sustained. Defense counsel then asked the witness who was with Tinoco at the time of his arrest. The witness replied that the Rios brothers were. The witness was asked the time of the arrest and he said shortly before midnight. The witness was then asked whether he left the Fiesta after Tinoco was arrested and he said that he did. Counsel asked no questions of the witness concerning hostility toward him exhibited by the Rios brothers at the scene.

On this appeal, the complaint of appellant is that the trial court excluded evidence which would have shown that the "group with whom the melee started and which surrounded the alleged victim was in a dangerous, aggressive and belligerent mood" and that such evidence bore upon the appellant's claim that he was apprehensive about his personal safety and acted in response to what he considered an immediate threat upon his life.

The difficulty with this contention lies in the fact that the trial court's ruling now complained of did not exclude evidence of hostility of the "group" or the Rioses exhibited toward David before appellant arrived. The trial court's ruling excluded only testimony of David as to the reason for Tinoco's arrest. No effort was made to elicit testimony from the witness as to what occurred between him and the Rioses following Tinoco's arrest. Such inquiry was not precluded by any ruling on the part of the trial court so that there is no basis for the claim of error now asserted.

Appellant's final assignment of error is based upon the admission into evidence of a statement made by the victim to the police. As part of the defendant's case, a police

officer who took a statement was called as a witness to testify to a portion of the statement which was believed to contradict the testimony of the victim at the trial. After that portion of the statement had been offered, the state upon cross-examination of the witness was permitted to introduce the entire statement with deletion of some objectionable portions, and have it read to the jury. The statement was generally consistent with the testimony of the victim at the trial. Appellant now contends that there was no proper evidentiary exception to the hearsay rule which permitted the use of the victim's prior consistent statement.

When a witness has been impeached by a prior inconsistent statement, the party who called that witness may "put other portions of the same statement in evidence to show the context and circumstances of the entire statement." Thomas, "Rehabilitating the Impeached Witness with Consistent Statements," 32 Mo.Law Rev. 472, 491 (1967). "The trial court has a broad discretion in determining the extent to which additional portions of a statement may be read into evidence to show the context of and circumstances under which the impeaching portion was made for the purpose of minimizing its impeaching force." *State v. Beishir,* 332 S.W.2d 898, 903[6, 7] (Mo.1960).

In this case, the trial court, when the state sought to make use of the statement, should have limited the state to the use of the portion which would have tended to show the context and circumstances of the portion used for impeachment purposes. The trial court accepted the state's erroneous position that simply because the defendant had employed a portion of the statement the state had a right to place the entire statement in evidence.

However, any error in the trial court's ruling here was harmless beyond a reasonable doubt because the defendant placed in evidence the portions of the statement which showed an unprovoked attack with a gun by appellant upon Rios. The portion read by the defendant started with Rios' telling Grado that no one had jumped his brother and Grado's responding by saying: "Take this, Big Boy," pulling out a pistol and shooting Rios in the wrist and relates the firing of the other two shots which struck Rios. The portion of the statement upon which the defendant relied for impeachment dealt with the activity and remarks of one of the group who was with Rios and related to what that person said and did after Rios had been struck by the third bullet and had hidden under a car. The portion added by the state dealt primarily with the preliminary actions of the appellant before the shooting. However, in view of the portion read by the defendant, he is in no position to assert prejudice by reason of the addition of that portion offered by the state.

Judgment affirmed.

All concur.